HAYES *against* WARD and others.

A surety, who pays the debt, is entitled to be put in the place of the creditor, and to all the means, and to every remedy which the creditor possesses, to enforce payment from the principal debtor.

If, therefore, a creditor takes a mortgage from the principal debtor, he does it not only for his own security, but for the indemnity of the surety, and he must do no act by which it may be invalidated, in the first instance, or be subsequently defeated or destroyed.

Whether a creditor can be compelled to resort to the principal debtor, in the first instance, and exhaust his remedies against him, before he can sue the surety? *Quære.*

But where a surety apprehends danger from the delay of the creditor, he may compel the creditor to sue the principal debtor; at least, on indemnifying the creditor for the consequences of risk, delay, or expense.

A creditor in *New-Jersey*, where all the parties resided, took from *B.*, the holder of a promissory note endorsed by the plaintiff, on a loan of money alleged to be usurious, a bond and mortgage, which was ample security for the debt; and instead of resorting to the bond and mortgage, or to the principal debtor, sued the plaintiff, (while transiently in this state) at law; but this Court granted an injunction to stay the suit at law, until the creditor had pursued his remedy on the mortgage in *New-Jersey*; reserving the question of costs, and all other questions, until the further application of the creditor.

THE bill, which was filed *May* 30th, 1818, stated, that the plaintiff, *David Hayes*, and the defendants, *Thomas Ward, Nathaniel Camp*, and *Cyrenus Beach*, resided at *Newark*, in the state of *New-Jersey*. That the defendant *C. B.* applied to *Joseph Walter*, a partner in trade with *Silas Hayes*, for money; and proposed to furnish notes, with which to raise five thousand dollars, and as an inducement to *W.*, proposed to take him into partnership, in a manufacturing establishment, &c. *J. W.*, on the 1st of *May*, 1811,

*June* 15th, and *Sept.* 6th.

1819.

HAYES
v.
WARD.

made a note, in the name of the firm of *Walter & Hayes*, for 1,000 dollars, payable in two years, to the plaintiff, *D. H.*, who endorsed it, for the accommodation of the makers, supposing it to be for their use, his son being one of the firm of *W. & H.* Another note of the same date, and for the same sum, was made by *J. W.*, in the name of *W. & H.*, payable two years after date to *Aaron Roff*, who endorsed it, and is since deceased. That on the 10th of *May*, 1811, two other notes were made by *W. & H.* for one thousand dollars each, payable in two years, to the defendant *C. B.*, and endorsed by him ; and he gave a receipt, dated the 27th of *May*, 1810, to *W.* for the four notes, stating that he had received them on account of two lots of land in *Newark*, sold to *J. W.*, but which were in fact never sold, being part of the intended manufacturing establishment, which was abandoned. That *C. B.*, also, obtained from *J. W.* two other notes, one for 750 dollars, dated the 1st of *April*, 1811, made by *Mark Walter*, payable in two years, and the other for 450 dollars, made by *John Trempore*, payable in one year, for which he gave a receipt, on account of the lots of land, and stating, that he was to account for them to *J. W.* on demand. With these six notes, *C. B.* applied to *T. Ward*, the defendant, to borrow money ; and it was agreed that *T. W.* should transfer to *C. B. fifty-eight* shares in the *Newark Banking and Insurance Company*, and that *C. B.* should thereupon endorse to *T. W.* the six notes, amounting to 5,200 dollars, and secure the payment by his *bond*, and a *mortgage* on real estate in *Newark ;* this agreement was carried into effect on the 3d of *June*, 1810; and the *mortgage*, which was duly registered, was ample security for the amount of the notes, it being the first mortgage. That *C. B.* applied to his own use all the money so raised, and disposed, also, of the bank shares for his own benefit. The bill charged, that the transaction relative to the loan between *T. Ward* and *C. B.*, was usurious, and by the law of *New-Jersey*, the notes, bond, and mortgage, &c., taken as security

on such usurious loan, are void. That *W. & H.*, the makers of the note, soon afterwards, became insolvent, and absconded; that *A. Roff* is dead, and that in 1815, *C. B.* became insolvent, and gave a second mortgage on his property to *T. W.* That the defendant *N. C.*, having obtained a judgment against *C. B.*, for 5,000 dollars, issued an execution, which was levied on the *equity of redemption of C. B.* in the mortgaged premises, and sold in *December*, 1815, and *N. C.* became the purchaser at the sheriff's sale, *knowing* at the time, all the transactions above mentioned, between *J. W.* and *C. B.*, and between *T. W.* and *C. B.* That the plaintiff, also, at the time of the sale, gave notice of these things to the said *N. C.* before he purchased, and cautioned him against the purchase. That the said *T. W.* instead of seeking payment of the notes from *C. B.* or *N. C.*, or from the mortgaged premises, took advantage of the plaintiff being in *New-York*, on occasional business, and had him arrested, in an action at the suit of *T. W.*, in the Supreme Court of this state, on the note for 1,000 dollars, endorsed by the plaintiff, and the plaintiff put in special bail to the action, in which a declaration was filed of *May* term 1818. The bill *prayed*, that the defendant *T. W.*, might be decreed to release and discharge the plaintiff from his endorsement, without prejudice to the rights of *T. W.*, under the mortgage, or against *C. B.*; and that he be perpetually enjoined from prosecuting his action, or any other action at law, against the plaintiff, by reason of the said endorsement, and pay to the plaintiff his costs and charges, &c.

The bill was taken, *pro confesso*, against the defendants, *Camp* and *Beach*. The defendant *Ward demurred* to that part of the bill which sought a discovery from him, in relation to any application to him by *C. B.*, to raise money for *C. B.*'s use, or to any negotiation between them, respecting the transfer of the notes, or the consideration of the transfer, or as to any matters which might subject the defendant

to any penalty or forfeiture. The defendant *T. W.* an-
swered to the residue of the bill, admitting the making and
endorsing the notes, the bond and mortgage, and that the
mortgage is a sufficient security, and a valid lien on the pro-
perty ; and, also, the second mortgage, and the transfer of
the notes to him, but denied all knowledge of the considera-
tion of them. He admitted, that the parties all resided in
*New-Jersey*, and the statute of that state relative to usury,
and the insolvency of *W. & H.*, and the judgment and
execution of *N. C.*, and the sale of the equity of redemp-
tion, &c.

The *demurrer* was argued and allowed in *September*,
1818, and a decree thereon entered in favour of *T. W.*, ex-
empting him from making any answer to the parts of the
bill demurred to.

*June 15th.*

*Riggs*, for the plaintiff, contended, 1. That the demurrer
put in by *T. W.* was an implied admission of the invalidity
of the bond and mortgage.

2. That as the plaintiff is a mere *surety*, the estate of the
principal debtor ought first to be resorted to for payment.

3. That as the defendant *T. W.* insists on the validity
of the bond and mortgage, and the sufficiency of the mort-
gaged premises, he ought to be perpetually enjoined from
proceeding against the plaintiff.

4. That *C. Beach* was the principal debtor was fully
proved, and not denied by *T. W*, the defendant.

5. That if *T. W.* is not to be perpetually enjoined, he
ought, at least, to be enjoined until he has exhausted his re-
medy against the mortgaged property, and until the further
order of the court, founded on the result of his proceedings on
the bond and mortgage, and that he ought to pay costs ; and
that if he failed to recover on the bond and mortgage, on
the ground of their legal invalidity, it would be a bar against
his recovery of the plaintiff, resulting from his own act, in
poisoning the security with usury. But that this question

would not arise until the defendant *T. W.* came back to this court for further directions.

6. That if the plaintiff ought to pay, and take the bond and mortgage for his indemnity, which would be the common rule of equity, if there was nothing peculiar in the case, the defendant *T. W.* ought to be directed to assign the bond and mortgage to the plaintiff, with a *covenant* as to their legal validity, since he asserts them to be valid; and if they are not, it is owing to his own unlawful bargain, when he took the note endorsed by the plaintiff.

7. That the plaintiff cannot plead usury, at law, because the usury arose after the notes were endorsed. The defendant *T. W.* ought, therefore, to litigate the question of usury in *New-Jersey*, at his own risk and expense. That if the plaintiff is obliged to pay the defendant *T. W.*, and take the bond and mortgage, and that security fails, he will then lose his indemnity.

*C. Baldwin*, for the defendant, *T. Ward*, contended, 1. That a creditor has a right to sue the security, in the first instance; and a judgment against him may be requisite for his security.

2. That if the pledge be invalid and rotten, the defendant ought not to be compelled to rely upon it.

3. This court will leave the parties to their legal rights and remedies.

4. That the plaintiff cannot ask the defendant to pay costs, on a bill for a perpetual injunction.

5. That if the plaintiff comes here for relief against the usury, he ought to have brought into court the sum really due to the defendants.

THE CHANCELLOR. It appears from the case that the defendant *Beach* is the principal debtor to the defendant *Ward*, on the note in question, and that the plaintiff who endorsed

it, stands in the character of surety. The plaintiff originally endorsed the note without consideration, for the benefit of the drawers, *W. & H.*, and the defendant *B.* took it from the drawers, in consideration of lots agreed to be sold to one of the makers, or of a partnership, into which one of them was to be admitted. This consideration failed, for the lots were not sold, nor the partnership entered into. As between those original contracting parties, the note was without consideration, and could not have been enforced. When the note was passed by the defendant *B.* to the defendant *W.* the dealing was exclusively between these two defendants, and the plaintiff's name remained on the note, as endorser, without any consideration for his endorsement. We have no direct evidence that the fact of his being a naked guarantor, or surety, without interest, was known to the defendant *W.*, when he received this and the other notes from *B.*, yet the facts are sufficient to justify such an inference. The note was not received by the defendant *W.* in the ordinary course of commercial business. It was taken upon the sale of bank shares; and instead of relying upon the credit of the prior parties to the note, accompanied with the endorsement of the defendant *B.*, he took a bond and mortgage from *B.*, as eventual security for the payment of the note. This and the other notes were sold by *B.* to the defendant *W.*, almost immediately after they were drawn, and the defendant *W.* admits that they were received by *B. from one of the makers;* nor does he deny a knowledge of *that fact,* at the time he took the bond and mortgage from *B.*

The knowledge of that fact was sufficient notice to him, that the plaintiff was a voluntary endorser, for the accommodation of the makers; and the defendant *W.* appears, from the pleadings and proofs, to be justly chargeable with knowledge, at the time he took the mortgage, that the plaintiff was a gratuitous endorser. The plaintiff is then entitled, in equity, to all the privileges with which a surety is clothed,

not only as it respects the defendant *B.*, but as it respects the defendant *Ward*, the present holder. I shall, therefore, in the further consideration of this case, assume the fact as clearly true, and well established ; that between the plaintiff and the defendants, *W.* and *B.*, the relationship existed of creditor on the one part, and principal debtor and surety on the other. This relationship was coeval with the bond and mortgage, and the parties to this suit are entitled to all the rights, and bound by all the duties resulting from that relation.

The grave and difficult question then presents itself, whether the defendant *W.* ought to be required to resort, in the first instance, to the mortgage which he took from *B.*, and which he says is a valid lien, and sufficient to satisfy the note?

It is alleged that the mortgage security is destroyed by the usury, and that it would be unavailing in the hands of the plaintiff, if he were to pay the note, and have the bond and mortgage assigned to him, (and which, as surety, he would have a right to demand) by way of substitution and indemnity. It is further alleged, that if the defendant *W.* has destroyed the validity of his own security taken from the principal debtor, he cannot have recourse to the plaintiff, because he has voluntarily disabled himself from affording to the plaintiff, as surety, the requisite substitution. The right of substitution is a valuable right belonging to a surety, and the creditor must do nothing to impair it.

There would be much equity in the plaintiff's case, if it should finally appear that the defendant *W.* had by his own act rendered the adequate security which he took from the principal debtor, illegal and void. The very taking of that security by him may have excited confidence in the surety, and lulled him to sleep, and deprived him of taking other and sound security, for his own eventual responsibility, until it was too late, and the rights of third persons had interven-

*The surety who pays the debt, is entitled to be substituted in the place of the creditor as to all the security or means possessed by the creditor, to enforce payment of the principal debtor.*

1819.

HAYES
*v.*
WARD.

The creditor, therefore, can do no act to invalidate or discharge the security he has taken from the principal debtor, to the prejudice of the rights of the surety.

ed. This consideration renders it an act of benevolence and equity, and imposes it as an obligation upon the creditor who takes security from the principal debtor, to take it fairly and lawfully, and to hold it impartially and justly. According to the doctrine of the civil law, the surety may *per exceptionem cedendarum actionum*, bar the creditor of so much of his demand as the surety might have received, by an assignment of his lien and right of action against the principal debtor; *provided* the creditor had, by his own unnecessary or improper act, deprived the surety of that resource. The surety, by his very character and relation of surety, has an interest that the mortgage taken from the principal debtor, should be dealt with in good faith, and held in trust, not only for the creditor's security, but for the surety's indemnity. A mortgage so taken by the creditor, is taken and held in trust, as well for the secondary interest of the surety, as for the more direct and immediate benefit of the creditor, and the latter must do no wilful act, either to poison it, in the first instance, or to destroy or cancel it, afterwards. These are general principles founded in equity, and are contained in the doctrines laid down in *Pothier's Treatise on Obligations*, (No. 496. 519, 520.) to which reference has been made in the former decisions of this court. (*Cheesebrough* v. *Millard*, 1 *Johns. Ch. Rep.* 414. *Steevens* v. *Cooper*, 1 *Johns. Ch. Rep.* 430, 431.)

This doctrine does not belong merely to the civil law system. It is equally a settled principle in the *English* Chancery, that a surety will be entitled to every remedy which the creditor has against the principal debtor, to enforce every security, and to stand in the place of the creditor and have his securities transferred to him, and to avail himself of those securities against the debtor. This right of the surety stands not upon contract, but upon the same principle of natural justice, upon which one surety is entitled to contribution from another. (2 *Ves.* 622. 1 *Wightwick*,

2—6. 1 *Desaussure,* 409. 2 *Madd. Ch. Rep.* 437. 14 *Ves.* 162. 10 *Ves.* 412. 11 *Ves.* 22.) (*a.*)

But the application of these principles is not, necessarily, the question, at present. If the defendant *W.* should be required to prosecute previously upon his mortgage, and he should be defeated in that remedy, by the invalidity of the mortgage, arising from his own illegal act, and should then recur back to the plaintiff, it would be in time to examine whether this case fell within the range of the doctrine to which I have referred. The only point now to be settled is, whether the defendant *W.* shall be stayed in his suit at law, until he has tried his remedy against the mortgaged premises.

I am not aware, that there is any general rule in Chancery, that the creditor must look to the principal debtor, and exhaust his remedy against *him,* before he can be permitted to resort to the surety. The general language in the books and the practice have been otherwise, and the surety has been considered (without any formal adjudication upon the point, and, perhaps, without any examination of it upon principle) as amenable, in ordinary cases, to the creditor, in the first instance, though the creditor may have taken ample security from the principal debtor. The creditor has usually called on the surety at his election, and left him to resort to the principal debtor for his indemnity, after he has paid the debt, and after he has been clothed, by substitution, with all the rights and securities of the creditor. " The holder of the security, therefore, in general cases," says Lord *Eldon,* in *Wright* v. *Simpson,* (6 *Ves.* 734.) " may lay hold of the security; and till very lately, even in circumstances, under which the security would not have had the same benefit, that the creditor would have had." But in late cases, and under particular circumstances, Lord *El-*

*Margin note:* 1819. HAYES v. WARD.

*Margin note:* Whether a creditor can be compelled in equity to resort, in the first instance, to the principal debtor, before he can sue the surety ? *Quære.*

(*a*) Vide *Clason* v. *Morris,* 10 *Johns. Rep.* 524. S. P.

+ *surety*

1819.  *don* admits, that the surety has a right to call upon the cre-

ditor to do the most he can for his benefit.

It is now considered as a settled rule, (see the cases refer-
red to in *King* v. *Baldwin*, 2 *Johns. Ch. Rep.* 562. and
3 *Merivale*, 579.) that a surety may resort to Chance-
ry, if he apprehends danger from the creditor's delay, and
compel the creditor to sue the principal debtor, though, pro-
bably, he must indemnify the creditor against the conse-
quences of risk, delay, and expense.   This is what Lord
*Eldon* supposes in the case already referred to.   As early
as the time of Lord Keeper *North*, (1 *Vern.* 190.) it was
held, that equity would compel the principal debtor to pay
the debt, after it had become due, at the instance of the
surety, and though the latter had not been sued, for it was
" reasonable that a man should always have such a cloud
hanging over him."   It seems, also, to be now considered,
(2 *Fonb.* 302. n. i. 17 *Ves.* 517. 520.) as the right of a
surety to call upon a creditor having another fund, which the
surety, cannot make available, and to require him to resort
to that fund in the first instance and exhaust it.   And it is
now settled, that the surety may require the creditor upon
a proper indemnity, to go and prove his bond under a com-
mission of bankruptcy of the principal debtor, and the cre-
ditor will be a trustee for the dividends to the surety paying
the whole.   (*Beadmore* v. *Cruttenden*, 1 *Cook's Bank. Law*
211.   10 *Ves.* 414.   6 *Ves.* 734.)   The case of *Wright* v.
*Nutt*, (1 *H. Black.* 136.   3 *Bro.* 326.) which underwent
great discussion, and which was much questioned, though
not overruled, by Lord *Eldon*, in *Wright* v. *Simpson*, (6 *Ves.*
714.) may be cited for the principle, that there are cases in
which a creditor *may*, in equity and good conscience, be
compelled to resort to a particular fund, before he pursues
the debtor personally.   One circumstance that led Lord
*Thurlow*, Lord *Kenyon*, and, afterwards, Lord *Rosslyn* to
that decission, was, that the *creditor could not assign the be-
nefit of the fund to the debtor*.   It is easy to perceive that

*A surety ap-
prehending
danger from
the delay of
the creditor,
may come into
this Court and
compel the
creditor to sue
the principal
debtor, on giv-
ing an indem-
nity against
the consequen-
ces of risk, de-
lay, and ex-
penses.*

*A creditor
having a par-
ticular fund,
may be com-
pelled to resort
to that fund,
before he pur-
sues the debt-
or personally.*

'such a principle applies with much greater force to the case of a surety, and to a fund or pledge, created at the time of the original transaction between the parties. But all the instances to which I have alluded, may be considered as cases of a special nature; they do not appear to establish any such *general* rule as that derived from the civil law, requiring the principal debtor to be first sued, which rule prevails in all those countries where the civil law is an essential part of the municipal law of the land.

According to the *Roman* law, in use before the time of *Justinian*, the creditor, as with us, could apply to the principal. *Jure nostro est potestas creditori, relicto reo, eligendi fidejussores;* (*Code*, 8. 41. 5.) and the same law was declared in another imperial ordinance. (*Code*, 8. 41. 19.) But *Justinian*, in one of his *Novels*, (*Nov.* 4. c. 1. entitled, *Ut Creditores primo loco conveniant principalem*,) allowed to sureties the exception of discussion, or *beneficium ordinis*, by which they could require, that before they were sued, the principal debtor should, at their expense, be prosecuted to judgment and execution. It is a dilatory exception, and puts off the action of the creditor against the surety, until the remedy against the principal debtor has been sufficiently exhausted. This provision in the *Novels*, has not been followed in the states and cities of *Germany*, except in *Pomerania*; (*Heinec. Elem. Jur. Germ.* lib. 2. tit. 16. s. 449, 450, 451. 465.) but it has been adopted in those other countries in *Europe*, as *France, Holland, Scotland*, &c. which follow the rules of the civil law. (*Pothier's Trait. des Ob.* No. 407—414. *Code Napoleon*, No. 2021, 2, 3. *Voet, Com. ad Pand.* tit. *De Fidejussoribus*, 46. 1. 14—20. *Hub. Prœlec.* lib. 3. tit. 21. s. 6. *Ersk. Inst.* 504. s. 61.) A rule of such general adoption shows that there is nothing in it inconsistent with the relative rights and duties of principal and surety, and that it accords with a common sense of justice, and the natural equity of mankind.

*+ the surety before applying to*

1819.

HAYES
v.
WARD.

1819.

HAYES
v.
WARD.

Where a cre-
ditor, who held
a bond and
mortgage ta-
ken in *New-
Jersey,* where
all the parties
resided, as se-
curity for a
note endorsed
by the plaintiff,
and transferr-
ed by B. to the
creditor, on an
usurious lóan,
instead of re-
sorting to the
mortgage or
the principal
debtor, sued
the plaintiff,
while in this
state, as en-
dorser; this
Court granted
an injunction
to stay the suit
at law, until
the creditor
had pursued
his remedy on
the mortgage.

Without meaning, however, to lay down any such general rule, (and for which I have not seen any sufficient authority in the equity jurisprudence of *England,*) I think there are peculiar circumstances, in this case, to call for a continuation of the injunction upon the suit at law, until the defendant *W.* has pursued his remedy upon the mortgage. The defendant *W.* has shown a distrust of the validity of the mortgage by his demurrer, and by omitting to prosecute either the plaintiff, or the defendant *B.*, in *New-Jersey,* where they all reside, and where no impediment to a suit appears to exist, and by prosecuting the plaintiff, while on a temporary visit to *New-York.* The defendant *W.* ought to be obliged, under such a just suspicion of his case, to try the validity of his mortgage, at home, and not to compel the plaintiff to pay, and then turn over to him a pledge, which if frail and insecure, has been rendered so by his own illegal act. I put this case entirely upon the ground of the allegation, to which no answer has been given, that the mortgage is infected with usury, and would be useless and void, if placed, by substitution, in the hands of the surety. If this should happen to be the case, the plaintiff, on paying, might be deprived of all indemnity from his principal, by reason of the conduct of the creditor.

Nor does it appear to be necessary, that the suit at law should proceed to judgment, for there is no allegation of any apprehension of the plaintiff's insolvency, and the mortgage, if good, is admitted to be an ample security.

I shall, accordingly, continue the injunction, until further order, to the end that the defendant *W.* may make a fair experiment with his remedy upon the mortgage, before he applies for leave to proceed in his suit at law; and the question of costs, and all other questions arising upon this case, are reserved until such further application.

The following order was entered : " It is ordered, &c. that the injunction issued in this cause, against the defend-

ant *Thomas Ward,* restraining him from proceeding against the plaintiff in the action at law, in the pleadings mentioned, be continued until the further order of this Court to the contrary; and that the said defendant, *Thomas Ward,* be, and he is hereby prohibited from proceeding in the said action at law, in the pleadings mentioned, and in any other action at law, against the plaintiff, in the promissory note in the pleadings mentioned, endorsed by him, until the defendant, *Thomas Ward,* shall have pursued and exhausted his remedy at law and in equity, on the bond and mortgage in the pleadings mentioned, given by the defendant *Cyrenus Beach,* to the defendant *Thomas Ward,* as a further security for the payment of the said promissory note, endorsed by the plaintiff, and other promissory notes in the pleadings mentioned, and until the further order of this Court to the contrary. And it is further ordered and decreed, that after the said defendant, *Thomas Ward,* shall have pursued and exhausted his remedy on the said bond and mortgage, as aforesaid, if he shall be unable to obtain by means of the said bond and mortgage, payment and satisfaction of the money due on the said promissory note, endorsed by the plaintiff, he shall be at liberty to apply to this Court for further directions, with respect to the said injunction, and his further proceedings at law, against the plaintiff, on the said promissory note, endorsed by him in the pleadings mentioned; in which case, the defendant *Thomas Ward,* is to satisfy this Court as to the steps he may have pursued upon the said bond and mortgage, and why he has not been able to obtain satisfaction of the said note, or the amount thereof, if such shall be the case; and the question of costs, and all further directions, are reserved for the further consideration of this Court."