## Case No. 14,418.

### UNITED STATES v. ABORN et al.

[3 Mason, 126.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1822.

EXECUTORS — CUSTOMS ENTRY — PROBATE BOND — CUSTOM-HOUSE BOND.

1. An executor, as such, has a right to enter goods belonging to his testator at the custom-house; and, as executor, to give bonds for the duties. Such bonds bind the estate of the testator.
[Cited in U. S. v. Boyd, 24 Fed. 694.]

2. If the executor become insolvent, the United States may, in equity, claim payment of the debt due for duties, from the sureties upon the probate bond of the executor, where the executor has wasted the assets, and are not obliged to resort for payment to the surety on the custom-house bond in the first instance.
[Cited in Pratt v. Northam, Case No. 11,376; Pierpont v. Fowle, Id. 11,152.]

This was a bill in equity, brought by the United States against Daniel T. Aborn, the sole acting executor of Samuel Aborn deceased, against the sureties of the same executor on his probate bond, against the heirs and devisees of the testator, and against Edward Carrington, to whom Daniel T. Aborn had assigned, and conveyed all his estate. The bill charged that Daniel T. Aborn was insolvent, and had wasted the personal estate of the testator. That at the decease of the testator he was the owner of certain merchandise on board of the ship Midas, which afterwards arrived at Salem, in Massachusetts, and was there regularly entered at the custom-house by Daniel T. Aborn, as executor, who gave bonds for the payment of the duties thereon, as executor, one of which bonds remained unpaid. The object of the bill was to obtain payment of this bond (viz. $580) from some, or all of the parties to the bill, according to the order in which they might be liable by law. The defendants put in various answers, according to their respective rights, denying the equity of the United States against them, and alleging that Samuel Ropes, the surety upon the custom-house bond, was still alive and solvent, and that the remedy of the United States, if the bond remained unpaid, was against him. The answer of Edward Carrington admitted the conveyance to him; but asserted that he was a bona fide purchaser for a valuable consideration without notice. It is unnecessary to give the substance of the answers at large, as the opinion of the court did not go into their particular merits.

The cause came on to be heard upon the whole evidence, the general replication having been filed, and was argued by:

U. S. Dist. Atty. Pitman, for the United States.

Mr. Crapo, for one of the devisees.

Searle & Brigham, for other defendants.

STORY, Circuit Justice. There are very few facts in controversy in this case, and upon these I shall have occasion to comment, as I proceed in the consideration of the merits of the suit. The testator was the owner of certain goods on board of the Midas, which, after his death, arrived at Salem, and were there regularly entered at the custom-house by Daniel T. Aborn, as executor, and bonds were duly given by him, as executor, with Samuel Ropes, as surety (who is admitted to be solvent), for the full amount of the duties. Two of these bonds have only been paid. The third has never been paid. But the same, after it became due, was sent to the district attorney of Massachusetts for suit, who, on application of the counsel and friends of the surety, asserting that Ropes was but a surety, and the estate of the testator was abundantly sufficient to pay the debt, consented to postpone the suit, and institute proceedings in Rhode Island against the executor of the testator, and other proper parties, to procure

payment of the bond out of the assets, upon a special deposit being made in the Branch Bank of the United States to the full amount of the sum due on the bond, as collateral security for the payment, if it should not be otherwise discharged. The special deposit was made and the present suit was accordingly brought. In this transaction there is certainly nothing which constitutes in law or equity a discharge of the bond. It was on the part of the district attorney a very proper exercise of discretion. and there is certainly much equity in not insisting upon payment from a surety. when the principal is able to pay, and the United States is secure against any ultimate loss. Nor is there any hardship on the other side; for the collection act of 1799, c. 128 [1 Story's Laws, 573; 1 Stat. 627, c. 22], has, in cases of insolvency, given to a surety on customhouse bonds the same rights of priority and advantage, which the government itself possesses. Collection Act 1799, c. 128, § 65 [1 Story's Laws, 573; 1 Stat. 627, c. 22]. Courts of equity are in the constant habit of administering relief in favour of sureties wherever they can (see Parsons v. Briddock, 2 Vern. 608; Wright v. Morley. 11 Ves. 12, 22; King v. Baldwin, 2 Johns. Ch. 554; Id. 17 Johns, 384; Hayes v. Ward, 4 Johns. Ch. 123); and certainly will not compel a creditor against his will to resort in the first instance to the surety, when he can enforce payment from the principal and those claiming under him. There is a great difference between interfering to aid a surety against the creditor, and interfering to prevent the creditor from his choice to aid the surety. The answers then, so far as they proceed upon the existing liability of Ropes, as surety, afford no defence to the suit, for the government is not compellable to resort to such party. The special deposit is in no just sense a payment of the bond. It is expressly proved to have been given as collateral security.

The next consideration is. whether this is a mere personal obligation, binding the executor in his individual capacity only, or a security binding the estate, and to be discharged out of the assets of his testator. It appears to me that the debt is a debt due ultimately from the estate. No person but the owner or consignee, his agent, or factor, is permitted by law to enter goods and give bonds for the duties. The duties accrued upon the importation, and are a charge upon the goods. The goods constituted a part of the testator's estate. The executor entered them as his legal representative; and in no other capacity had he the slightest right to intermeddle with them. But it is suggested that there is no clause in the collection act which authorizes the entry by an executor, as such. In terms this may be true; but not in intendment of law. The executor. as qualified owner, in his capacity of executor, is entitled to enter the goods, and give the bonds. If he pays the duties, they are a charge upon the estate. If he gives bonds he may thereby render himself personally liable; but he does not necessarily exonerate the estate. Suppose the surety in this case had paid the debt, could he be obliged to look to the insolvent executor, and might he not recover the money from the testator's estate? The debt is not payable by the executor on his own account, but as a debt due from the estate; and if paid by the surety it would be a payment for the principal in his capacity as executor. Whoever in the first instance may pay the debt, it is ultimately chargeable to the estate, for that receives the whole benefit; and a court of equity will make that party directly liable who must ultimately pay. Riddle v. Mandeville, 5 Cranch [9 U. S.] 322. This applies a fortiori where the immediate party is insolvent. If it were necessary to go farther, I might rely on the more general grounds, that bonds for duties do not create or constitute the debt. They are collateral security for the payment of duties. The debt is due to the government upon the importation; and if no bond is taken, it is not thereby gone; but may be enforced against the importer or consignee. This was so settled. as far as the opinion of this court can settle it, in the case of U. S. v. Lyman [Case No. 15,647]; and I have not seen any reason to change that opinion. The right, therefore, of the United States to proceed against the estate of the testator for the duties, which is a debt primarily due from the estate, is in my judgment entirely clear. I meddle not with the question, how far that right may be controlled by other intervening equities of third persons, where bonds have been taken as security. That would embrace very extensive considerations. For the same reason I pass over the questions, how far devisees, legatees, and heirs. taking the real estate (which in this state is assets for payment of debts), ought in a court of equity to be held liable to pay debts like the present, upon a deficiency of assets, occasioned by the waste or mismanagement of the executor; and how far an assignee (such as Carrington is asserted to be in the bill), bound by an undertaking to discharge such debts upon the execution of the assignment, may be made liable here as upon a trust. Neither of these questions are necessary for the decision of this suit. The former could only arise where the sureties to the probate bond were also insolvent, which is not the present case. The latter does not arise upon the facts, for no such assignment clothed with such a trust is established in proof.

It is very clear that the sureties upon the probate bond are liable for any misapplication of the personal assets by the executor. It is in proof that more personal assets were received than were sufficient to discharge the bond due to the United States, and all

other claims having priorities. It was waste to discharge any inferior debts before discharging these; and the payment of legacies out of the assets before such discharge was a wrongful administration. But the account rendered in 1819 shows a clear balance in the hands of the executor of more than $5000, which was ordered to be distributed according to law, and has not been accounted for. For the deficit of the personal estate to pay the debt so due to the United States, the sureties upon the probate bond of the executor are ultimately liable, since it arises from misapplication of the assets. If the devisees or legatees were compellable to pay it, they would have a right of reimbursement from the sureties. Such a circuity is not here to be insisted on. A court of equity will decree them to pay the sum directly, which they in the end are responsible to pay. I shall accordingly direct a decree declaring the debt, in this case, to be a charge on the estate of the testator; that the executor has wasted the assets in his hands, and by reason of his insolvency is now unable to pay the debt; and, therefore, that the defendants, who are sureties upon the probate bond, be decreed to pay it with interest from the time the bond became due with costs. As to all the other parties, the bill is to be dismissed without costs to either party. See Riddle v. Mandeville, 5 Cranch [9 U. S.] 322.