## Case No. 17,625.

### WIGGIN v. DORR.

[3 Sumn. 410.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1838.

PLEDGE OF INSURANCE POLICY—RIGHTS AS AGAINST COMPANY—SET-OFF—MARSHALLING OF SECURITIES.

1. Wiggin advanced money to Barrett & Brown, taking as collateral security the assignment of a policy of insurance for $10,000, underwritten by the American Insurance Company, on merchandise, being the proceeds of the money advanced. The ship containing the merchandise was lost at sea. Barrett & Brown also obtained from the American Insurance Company a loan of $7,000 on a bottomry bond on the ship Tim, wherein Dorr was surety. This ship performed her voyage safely; but Barrett & Brown had in the mean time failed. The American Insurance Company took possession of the ship, sold her, and applied the proceeds, so far as they went, to the payment of the debt of $7,000. They did not proceed against the surety Dorr, for the balance; but, on his promise to indemnify them, retained from the loss on the policy above mentioned a sum sufficient to cover the balance (about $2,826.12). Held, that Wiggin was entitled to the whole sum of $10,000 insured by the American Insurance Company, as the fund out of which his advances were to be paid, without deducting any claims of the company against Barrett & Brown; that his money was lent upon this specific security; that he has a prior and superior equity over the surety, Dorr; and that he has a right to be substituted in equity to the claim of the company on the bottomry bond against Dorr, to the extent of the sum detained by them.

2. The election of a creditor to retain or recover a debt from one of two parties, or out of one of two funds, no matter how positive may be his right to this election, cannot vary in a court of equity their rights inter sese.

3. Whoever has bona fide acquired a specific right to a thing belonging to a debtor is entitled to hold it against all persons who cannot show a higher equity.

4. A surety is entitled to the protection of a court of equity; also sub modo to the benefit of all the securities which the creditor has.

[Cited in Lyon v. Bolling, 9 Ala. 463.]

Bill in equity [by Timothy Wiggin against John Dorr]. The facts of the case were as follows: On the 5th of September, 1833, Robert Hooper, Jr., of Boston, as agent of the plaintiff, who is a resident banker in London, entered into an agreement with Messrs. Barrett & Brown, of Boston, whereby Stephen Jarvis, of the brig Tim, was authorized to value and draw bills at the Brazils upon the plaintiff, not exceeding £3.000 sterling, at sixty days' sight, for account of Messrs. Barrett & Brown, for the costs of shipments to be made for them, and put on board the said brig for the United States, upon condition that the invoices and bills of lading of the shipments should be forwarded to Hooper at Boston, and consigned to his order. The brig proceeded on her voyage; the bills were drawn on the plaintiff, and duly paid; and the shipments (coffee) were put on board, and were consigned to Hooper, and safely arrived at Boston, in February, 1834, the invoice value thereof being about $17,185. A negotiation was then entered into between Barrett and Brown, and Hooper, for the plaintiff, and Samuel Putnam, of the house of Barrow, Putnam and Company, of Antwerp, by which it was agreed that the merchandise should be shipped to Antwerp, consigned to Barrow, Putnam and Company, for sale, and the proceeds of the sale were to be remitted to the plaintiff, at London. It was further agreed that Barrett and Brown should procure insurance on the merchandise for the voyage, payable, in case of loss, to the plaintiff, as collateral security for the advance, so as above stated, made by the plaintiff. The merchandise was accordingly shipped in the same month, on board of the brig called the Soule, for Antwerp, consigned to Barrow, Putnam and Company. The Soule sailed on the voyage on the 14th of the same month; but was never afterwards heard of, and is supposed to have foundered at sea. On the 8th of the same month Barrett and Brown procured a policy of insurance to be underwritten by the American Insurance Company on the said merchandise for the voyage, for the sum of $10,000, in the common form of the Boston policies; but did not, as had been agreed, cause the same policy on its face to be made payable in case of loss to the plaintiff. Hooper first discovered the omission about the 28th of June, 1834, and remonstrated with Barrett and Brown; and one of the firm then, by an endorsement on the policy, ordered the amount to be paid to the plaintiff, in case of loss. The American Insurance Company gave their assent in writing on the policy to this assignment, reserving to themselves all their rights expressed in the policy. The policy contained the following clause, common in the Boston policies. "In

case of loss the assured to abate one per centum, and such loss shall be paid in sixty days after proof and adjustment thereof, the amount of the premium rate if unpaid, and all sums due to the company from the assured when such loss becomes due being first deducted, and all sums coming due being first paid, or secured, to the satisfaction of the said president and directors, they discounting interest for anticipating payment." Another clause of the policy was in these words: "It is also agreed that this policy shall be void, in case of its being assigned, transferred, or pledged, without the previous consent, in writing, of the assurers." There was another policy of insurance underwritten by the Suffolk Insurance Company, on the same goods, for the same voyage, for $10,000, on which similar indorsements were made. On the 17th of September, 1833, Barrett & Brown obtained from the American Insurance Company a loan on bottomry of $7,000, on a bottomry bond, executed by Barrett & Brown, as principals, and by the defendant, John Dorr, as surety, for the term of twelve calendar months, upon the bottom and freight of the brig Tim. The particular terms of the bond need not be stated. The risk safely ended, and the money became due to the company in November, 1834. Some time before the 27th of April, 1835, but how long before does not appear, Barrett & Company having failed, the insurance company, through their president, represented to Dorr that they should look to him for payment of the bottomry bond. The defendant, Dorr, protested against the claim, and insisted that the company ought to take possession of the brig Tim, and sell her, and apply the proceeds to discharge the debt, and if the proceeds were not sufficient to retain from the loss which should become due on the foregoing policy as much as would cover the balance due to the company on the bond. Dorr afterwards took the advice of counsel on the subject, and gave notice to the president of the company that he should insist upon such retainer, and resist payment. The company afterwards sold the brig Tim. And it was agreed between the company and Dorr, that they should retain from the loss on the policy sufficient to cover the balance (about $2,826.12), he, Dorr, undertaking to defend the company against any claim of the plaintiff therefor. The company accordingly deducted the balance, and paid the residue, after some other deductions to the plaintiff. The present bill was brought by the plaintiff against Dorr, to recover from him the sum of $2,826.12, so retained, upon the ground of a superior equity in the plaintiff.

C. P. & B. R. Curtis, for plaintiff.

W. J. Hubbard, for defendant.

STORY, Circuit Justice. Under the circumstances of this case, for there is no real controversy as to matters of fact, the question arises, whether the plaintiff is entitled to the relief, which he seeks. And this must, in my judgment, mainly depend upon the question, whether he has a superior or equal equity with the defendant. If he has a superior equity, then, inasmuch as the only real controversy is between the parties before the court, the insurance company having a clear right of retainer, there ought to be a decree in his favor for the full amount retained by the company, as a sum primarily to be paid by the defendant, in exoneration of the plaintiff. If there is an equal equity, then the question will arise, whether there ought not to be an apportionment equally between the plaintiff and the defendant, of the sum so retained, as a common charge or burthen upon both of them. See cases cited in 1 Story, Eq. Jur. §§ 470, 484, 497–502, 634; Aldrich v. Cooper, 8 Ves. 382.

I have said that the main question is, as to the equities between these parties before the court. For I cannot for a moment entertain the notion, that, in a court of equity, however positive may be the right of a creditor to retain or recover a debt from one of two parties, or out of one of two funds, his election to retain or recover from the one or the other can change their rights inter sese. That would be to say that a creditor might by his own caprice of choice, or exercise of discretion or private friendship, disturb the rights of third persons, or injuriously affect or extinguish their remedies. We all know that in the common case, where a creditor may resort to two funds to discharge his debt, a court of equity will compel him to take satisfaction out of one, when the rights and interests of third persons are concerned in the other fund; and that, if he has taken satisfaction out of the latter, such third persons will often be substituted to his rights in the fund which he has left untouched. That constitutes the old head in equity of marshalling securities, in respect to which one need not do more than to refer to Lord Eldon's judgment in Aldrich v. Cooper, 8 Ves. 382, 391–394, and to the common elementary treatises on the subject. See 1 Story, Eq. Jur. c. 12, §§ 633–645, and the reporter's note to Averall v. Wade, Lloyd & G. 264–269; Clifton v. Burt, 1 P. Wms. 679, Cox's note, 1; Lanoy v. Duchess of Athol, 2 Atk. 446; Aldrich v. Cooper, 8 Ves. 382. Indeed, the principle goes further; and a mortgagee, who has two funds, as against other specialty creditors, who have but one fund, will, in case of bankruptcy or insolvency of the debtor, be compelled first to resort to the mortgage security; and will be allowed to claim against the common fund only what the mortgaged estate is deficient to pay. Greenwood v. Taylor, 1 Russ. & M. 185, 187. I must treat this case exactly as if the insurance company were parties to this bill, and before the court; and the question was, which, as between the plaintiff and the defendant, ought to be decreed to pay them the debt. Then, how stands the present case

as to the equities between the plaintiff and the defendant? In the first place, it is plain, that the plaintiff advanced his money on the bills of exchange, drawn for the benefit of Barrett & Brown, on the double security of the original consignment of the merchandise to Hooper at Boston, and the policy underwritten on the voyage from the Brazils to Boston. When the new arrangement was made between the parties at Boston, by which the merchandise so subjected to the plaintiff's lien under the original consignment was to have a new destination to Antwerp, it is equally plain, that there was no intention to yield up this lien for the advances; but solely to further the interests of Barrett & Brown by a sale of the merchandise in Europe, the proceeds to be remitted to the plaintiff in London against these advances. I consider it manifest, that Barrow, Putnam & Co., to whom the consignment for sale at Antwerp was made, were parties to this arrangement, and bound thereby; and if they had received the consignment, and sold it, they would have been responsible to the plaintiff for the remittance of the proceeds; and if they had diverted them to any other purpose, they would have been liable for a gross departure from duty. The policies, procured from the American and Suffolk Insurance Companies, were a part of the same arrangement, to secure the plaintiff a full fund of indemnity, in case of the non-arrival of the consignment and a loss thereof by the perils insured against. He stipulated, therefore, in lieu of his lien on the original consignment, for a lien on the proceeds of the property, and also for a lien on the policies for the voyage from Boston to Antwerp. That stipulation, so far as respects the policies, was not punctiliously performed by Barrett & Brown; but tne omission has since been cured by their assignment upon the policies, so far as it was capable of being redressed.

Now, what was the intention of Barrett & Brown, and Hooper, the agent of the plaintiff, in regard to these policies. Was it, that the plaintiff should have the full security of the whole value of the property consigned to Antwerp by means of these policies? Or so much only, as might remain after the deduction by the offices of all sums, which were due, or might become due to them, according to the clause in the policies already cited? If the latter, then it is plain that these policies might, in reality, be no security at all to the plaintiff, or a very limited security, because the outstanding claims of the offices might absorb the whole, or a large part of the insurance, in case of a total loss. It is difficult, even for a moment, to contemplate the arrangement to have been made with any such intention, or upon any such contingency. The object of the parties evidently was to substitute another arrangement for the present fixed rights of the plaintiff over the property, by giving him an equivalent security, in each of the alternatives involved in the new voyage, viz., by an appropriation of the proceeds of the property on the sales, in case of a safe arrival at Antwerp, or of the proceeds of the policies in case of a loss and non-arrival. Nor is it by any means an unimportant circumstance that Hooper, at the time of this arrangement, was wholly ignorant and unsuspicious of any subsisting claims of the insurance companies, and especially of the claim of the American Insurance Company, on the bottomry bond. The common clause in the policies, entitling the companies to deduct from any loss the amount of their claims, would not instruct him as to the actual existence of such claims; and the agreement, that the policies in case of loss should be payable to the plaintiff, would disarm him of any suspicion of that nature. To me it appears perfectly clear that the whole arrangement proceeded upon the basis, that in case of loss, the whole sum of ten thousand dollars, insured by each of the policies, was to belong to the plaintiff, as a fund out of which his advances were to be satisfied. The assignment contemplated by the parties was not an assignment of such part of these policies, as might remain, after deducting all the claims of the companies; but an effective assignment of the whole amount insured, as the only full and substantial security of the plaintiff. The rights of the companies against Barrett & Brown, in regard to other claims, not arising out of those policies, were one thing. The rights of the plaintiff, as between him and Barrett & Brown, were quite another thing. Barrett and Brown were understood, and meant to be understood by Hooper, as assigning to the plaintiff the whole amount insured, and nothing less. If the assignment was not effectual, for the full amount, it was not, that it was not so intended; but that Barrett & Brown had not so large an interest to assign.

Taking the case in this view, it seems to me clear, that the plaintiff has the superior equity. He is to be treated, not as a creditor of Barrett & Brown, trusting to their personal responsibility; but as a creditor, lending his money upon specific securities, the consignment of the original cargo shipped at the Brazils, and the policies thereon, and then a substitution of the security of the cargo and its proceeds on the voyage to Antwerp, and the attendant policies therefor. The plaintiff, then, may properly be considered, not as a mere surety, or a mere creditor in personam, but as a creditor, having a lien in rem, and stipulating for such a lien, as the foundation of his original advances, and of his subsequent extension of the original credit, and parting with his original rights and securities for the advances. At the moment when he assented to the new voyage of the cargo to Antwerp, he stood as a purchaser pro tanto of the proceeds of the sales, and of the policies in case of a loss. He advanced a valuable considera-

tion therefor. He stipulated for, and was entitled to a specific lien in rem. As between himself and Barrett & Brown, from the moment that these policies were underwritten, they belonged to him as his own securities, specifically pledged for the advances. If Barrett & Brown had died insolvent, their general creditors could not have touched the funds; but they must have stood bound by the plaintiff's claims. Here, then, we have the case of a creditor having a specific lien on the thing, coming in conflict with a surety, who has no such lien, and has not even stipulated for it. It is true that as a surety he is entitled to the favor of a court of equity. But against whom and against what property? Certainly not against third persons, who have advanced their moneys upon specific pledges, nor against the funds so pledged by a prior appropriation. The defendant stands as a surety trusting to the personal security of his principal, taking no pledge, and preferring to have no lien on the fund. He insists that the company ought to retain the fund from the person to whom it was previously pledged, not upon the ground, that he originally trusted to it, or that he has been misled by it; but simply upon the ground, that the company, having the fund in their hands, ought to apply it to his relief, rather than to the relief of the plaintiff to whom it was previously pledged by a specific agreement. There is no doubt, that the claim is, bonâ fide, so made; and as against the principals themselves, there is no doubt that the relief ought to be granted; and that if there were any surplus in the fund, beyond the advances of the plaintiff, it ought to be applied to his relief. But the difficulty lies in seeing how his claim is to prevail against the plaintiff, who is equally a bonâ fide creditor, and has acquired against all the world but the company, a specific pledge of it for his indemnity for his advances. In truth, the defendant has not even a general lien in this case. His whole equity is to be wrought out, if at all, through the equity of Barrett & Brown, who in respect to the plaintiff, have no equity; but stand as persons in delicto. In respect to liens, courts of equity constantly make a difference between those which are specific and those which are general. The former will prevail over the latter, whenever the claim can be satisfied elsewhere. Thus, if a party indebted by judgment, settles one of his real estates, on which the judgment is a lien, with a covenant against incumbrances, a court of equity will relieve the settled estate from that lien, and throw it upon the unsettled estates. And subsequent judgment creditors have no right to displace the rights of parties claiming under such a settlement, even though it may be defective in some of its provisions; and cannot call upon such parties to contribute towards the extinguishment of the prior judgment; and à fortiori cannot insist upon the prior judgment being satisfied out of the settled estates. That was the very case of Averall v. Wade, Lloyd & G. 252, where

Lord Chancellor Sugden elaborately discussed the subject; and took the distinction between cases, where the rights of third persons were concerned, in marshalling securities, and where they were not. In delivering his judgment on that occasion, the learned judge said: "A judgment creditor has not any specific lien on the land. He has only a general lien over all the estate of his debtor. A general creditor does not stand in the same right as a specific incumbrancer; and therefore in ninety cases out of one hundred, he cannot have any relief against a mortgagee, having a specific lien." Now, the defendant in this case does not stand so high as a judgment creditor, for he has not even a general lien. On the other hand, the defendant here is a specific incumbrancer; he has a specific lien on the fund for an express valuable consideration. Even if the defendant had paid the bottomry bond, his claim against the principals would have been that of a simple contract creditor, and not of a specialty creditor. That is clear from Copis v. Middleton, 1 Turn. & R. 224; Jones v. Davids, 4 Russ. 277; Hodgson v. Shaw, 3 Mylne & K. 189; Dowbiggen v. Bourne, 2 Younge & C. Exch. 471; and Reed v. Norris, 2 Mylne & C. 361.

But, then, it is said, that it is a general rule in equity, that a surety is entitled to the benefit of all the securities, which the creditor has. That is true, as Copis v. Middleton, 1 Turn. & R. 229; Mayhew v. Crickett, 2 Swanst. 185, 191; Wade v. Coope, 2 Sim. 155; and Hays v. Ward, 4 Johns. Ch. 123, 129,—fully establish. But then it is to be understood with all the qualifications belonging to the doctrine. Against whom is he entitled to these securities? Certainly not against persons who have a prior or higher equity; but solely, as these very cases show, against the principal and those who claim those securities by a posterior and dependent equity. The doctrine has other qualifications. It does not apply except to securities taken for the very debt, and the whole debt, and not to cases where the security is taken by the creditor for other debts, or for a distinct part of the same debt. Wade v. Coope, 2 Sim. 155, is direct to this point. See, also, Coope v. Twynam, 1 Turn. & R. 426, 429. Lord Eldon in Copis v. Middleton, 1 Turn. & R. 229, said: "It is a general rule, that in equity a surety is entitled to the benefit of all the securities which the creditor has against the principal. But," he adds, "the nature of these securities must be considered." Now, if one were disposed to refine upon the subject (which, however, I am not disposed to do), it might be truly said that this policy was never underwritten by the insurance company, with a view to any security at all upon the bottomry bond. The fact, that, in the event of the loss, it gave them the collateral right of retainer for that debt, was accidental, and not foreseen or designed. The policy was in no just sense taken as a security. It was rather a collateral right of set-off, arising from that transaction of all claims in general

against the assured. But it is not worth while to dwell on this peculiar circumstance. The real question, between the parties before the court, stripped of all unimportant circumstances, is, which has the best right to the fund secured by this policy, the assignee of it for a valuable consideration, without notice, or a personal creditor of the assured, to whom it has never been assigned, or promised to be assigned. It is certainly not easy to frame a doubt in equity, when the case is thus put; that he, who has a jus ad rem, and a jus in re, ought to be preferred to a creditor or surety, who has neither a jus ad rem, nor a jus in re. The principle in equity, I take to be, that he, who has, bonâ fide, acquired a specific right to a thing belonging to a debtor, is entitled to hold it against all persons, who cannot show a higher equity. The right of the plaintiff, so far as Barrett & Brown are concerned, attached to this policy from the first moment of its existence, although not consummated by an actual assignment, until long afterwards; and then the maxim applies, as to all persons claiming an equity through Barrett & Brown (which is all, that the defendant, as a surety, can claim), "Qui prior est in tempore, potior est in jure." I agree, that in this case, both parties are, in a general sense, equally innocent, and equally deserving. But one has a title to the property itself; the other has only a general claim to equity, not disturbing the superior rights of others.

Upon the whole, my judgment is, that the plaintiff has clearly the prior and superior equity to the whole of this fund; and in this view of the matter, it is wholly unnecessary to consider the question of contribution, which would arise, only if the equities were equal. I treat the case, as it has been treated at the bar, exactly as if the insurance company were now a party to the bill; and the question was, whether the company ought first to claim their debt of the defendant on the bottomry bond, or to retain it out of the loss on the policy. I think the equity of the plaintiff clear, to have the debt remain, where it primarily was, a debt on the bottomry bond, to be paid by the defendant, and not a debt to be deducted out of the policy. The company have two funds to resort to, and they are bound in equity to seek satisfaction first from the original parties to the bottomry bond. As the company have retained the amount out of the funds assigned to the plaintiff, he has a right to be substituted in equity to their claim on the bottomry bond. The case very much resembles that put by Lord Eldon in Aldrich v. Cooper, 8 Ves. 388, where, in bankruptcy, the crown by extent lays hold of all the property of the bankrupt, even against creditors, in which the crown will be confined by the court to such property, as will leave the securities of incumbrancers effectual. And Lord Eldon on that occasion, added: "This has been carried to a great extent in bankruptcy; for a mortgagee, whose interest in the estate was affected by an extent of the crown, has found his way even in

a question with the general creditors to this relief; that he was held entitled to stand in the place of the crown as to those securities, which he could not affect, per directum, because the crown affected those in pledge to him." Substitute the name of the insurance company for that of the crown, and the present case is, in substance, that put by Lord Eldon, the right of retainer performing the same functions as those of the extent.

My judgment accordingly is, that the plaintiff, having a superior equity, has a good title to the relief he seeks; and that a decree ought to pass, that the defendant do pay over to him the sum of $2,826.12; which has been retained by the insurance company, in discharge of their claim under the bottomry bond.