## S. WATSON *vs*. WM. SUTHERLAND.

### April Term, 1873.

SURETY—SUPERSEDEAS.—If the object of a surety be to supersede an execution upon the ground that the sheriff has not exhausted the property of the principal, the remedy is by petition showing property, not by original bill.

SAME—CREDITOR—SUBROGATION.—A surety is not entitled to come into this court to enjoin the creditor who is actively pursuing his legal rights, and compel him to exhaust liens and collaterals before going on the surety; he can only be subrogated to such securities as he may show actually exist, or be relieved to the extent of securities impaired by the act of the creditor.

SAME—FORMER SUIT.—If the surety has already had his day in court in the matter of the security in controversy, equity will decline to hear him.

*S. Watson*, for complainant.

THE CHANCELLOR :—The bill states that on the 17th of April, 1867, the defendant filed his original bill in this court against one H. D. Kent, alleging that Kent was indebted to him in the sum of $1287 by note ; that to secure the payment of this note, Kent had executed and delivered to him a mortgage on certain property, viz : a lot in Nashville, the machine shop situated thereon, together with all the machinery, engines, and other fixtures, tools, etc., belonging to said shop. The bill prayed for a sale of this property, and that the proceeds be applied to the satisfaction of complainant's debt and cost. That Kent filed a cross-bill to prevent Sutherland from foreclosing said mortgage. That on the 1st of December, 1869, a decree was rendered in said consolidated causes dissolving the injunction granted on Kent's bill, and ordering the property included in the mortgage to be sold. That there is among the papers in said cause a petition signed by Kent, and sworn to by him, dated February 24th, 1870, but not marked filed, in which he prays the said decree of sale be set aside, but complainant Watson has not been able to find among the papers in said cause or on the minute books of the court any order revoking said decree. That on the 23d day of March, 1871, said Sutherland filed an amended bill praying an attachment against the estate of Kent, and that a sufficient amount of property be attached

thereby to satisfy his debt; that an attachment was issued on the 23d of March, 1871, and levied on certain personal property in the shop of Kent, being part of the property embraced in the mortgage; that Kent replevied said property by executing a replevy bond in the sum of $1500, "upon which complainant placed his name as surety;" that on the 4th of December, 1872, a decree was rendered in said cause in which, after reciting the mortgage and the other proceedings in the cause, it is ordered and adjudged, on motion of Sutherland, that a decree be rendered for $640.34, and that an execution issue as at law. That, on the 10th of December, 1872, another decree was rendered confirming the report of the clerk and master and ordering execution to issue against complainant in favor of said Sutherland for $640.34, but that the same shall be first satisfied out of the property of H. D. Kent, if any can be found, and if none, then out of the property of the complainant. That *fi. fa.* issued, and has been returned with the following endorsement: "Came to hand March 27th, 1873, and executed by levying this *fi. fa.* upon all the stock and interest that S. Watson has in and to the Hide's Ferry Turnpike, or a sufficiency thereof to satisfy this *fi. fa.* with interest and costs. Levied March 29th, 1873, too late to advertise and sell. F. M. Woodall, deputy sheriff."

The complainant prays a writ of injunction to enjoin the defendant from selling the property of complainant levied on; and on final hearing that the defendant be restrained from proceeding in the above cause of *Kent* v. *Sutherland,* and *Sutherland* v. *Kent,* against complainant, until he shall have pursued and exhausted his remedies on the mortgage in the pleadings mentioned, etc,

If this were a proceeding to supersede the execution mentioned, and quash the return thereof, upon the ground that the sheriff does not show, by his return, that he had first exhausted the property of Kent before coming upon that of defendant, it was unnecessary to resort to an original bill as this is in form. A petition would have been all that was

14

necessary stating the facts upon which the application was
based.   But it would have been necessary to have stated, in
such a petition, that there was property of Kent in the
county which should have been levied on.   The provisions
in the decree and execution, providing that the debt shall
be first satisfied out of the property of Kent if any can be
found, is directory to the officer.   Code, § 3028 ; *Cheatham*
v. *Brien*, 3 Head, 554 ; *Anderson* v. *Talbot*, 1 Heisk. 414.
Undoubtedly the court from which the execution has issued
would compel the officer to obey the directions of the writ, if
he were knowingly violating it.   But the surety must show
the fact affirmatively, before he can interfere with the officer
in the discharge of his duty.   This he can only do by
showing, as a fact, that there is property of the princi-
pal which ought first to be levied on.   The present applica-
tion is fatally defective for want of this charge.

The bill does not undertake to impeach the decree under
which the execution in question issued.   It is, of course,
well settled, although not always kept in mind by learned
counsel, that a decree of this court can only be impeached
in this court by an original bill in the nature of a bill of re-
view for fraud, or some matter which shows that it was
wrongfully recovered, and without negligence or fault on the
part of the plaintiff; or by bill of review for errors appar-
ent, or new matter, or newly discovered matter.   The
present bill is based upon none of these grounds, and is not,
either in form or substance, a bill impeaching the decree
rendered in the case of *Sutherland* v. *Kent*.   Nor is it
claimed to be such by complainant's counsel.

It is in substance a bill seeking to compel the defendant to
pursue and exhaust his remedies on the mortgage mentioned
in the pleadings in the case of *Sutherland* v. *Kent* before
coming on the complainant.   It is based upon the supposed
right of a surety to compel the principal to exhaust liens and
collaterals before he can look to the personal liability of the
surety.   It need scarcely be said that there is no such
equity.   The creditor is entitled to make his election, and

enforce his lien, or his debt as he sees proper. All that the surety can claim where the creditor is himself active, is subrogation to the creditor's securities. If the creditor is doing nothing the surety may compel him to act, but for this purpose he must bring all parties before the court and show that there is a security to enforce. *Scanland* v. *Settle*, Meigs, 169, 173 ; *Woods* v. *Burroughs*, 2 Head, 202 ; *Dechard* v. *Edwards*, 2 Sneed, 93, 102 ; *Henry* v. *Compton*, 2 Head, 549 ; *Whitesides* v. *Latham*, 2 Cold. 91 ; *Gilliam* v. *Esselman*, 5 Sneed, 86.

Undoubtedly, if the creditor has done anything to impair the securities received by him from the principal so that he cannot subrogate the surety to them, chancery will interpose to relieve the surety *pro tanto*. So, if it appears that the creditor has by his act rendered the security doubtful, equity would compel the creditor to test the validity of the security before going upon the surety. This was the decision in *Hayes* v. *Ward*, 4 Johns. Ch. 134. The Chancellor says : "I put this case entirely upon the ground of the allegation to which no answer has been given, that the mortgage is infested with usury, and would be useless and void if placed, by substitution, in the hands of the surety. If this should happen to be the case, the plaintiff on paying might be deprived of all indemnity from his principal, by reason of the conduct of the creditor."

In the case before us, the bill does not show affirmatively, as it must to entitle the surety to relief, that there is any security, or has been any since he became liable, to which he can be subrogated. And, of course, it does not point out any act of the defendant since that date by which the security has been impaired or rendered questionable.

But a still stronger objection lies to the relief sought by this bill. The mortgage itself which it seeks to compel the defendant to enforce, and the property therein mentioned, were expressly embraced and involved in the suit in which the decree was rendered which is sought to be enjoined. The complainant was a party to the suit, and it was his duty

then and there to have obtained, if he were entitled to it, the relief he is now seeking. He has had his day in court in regard to this very matter, and there would, indeed, be no end to litigation if he could now begin anew, and fight the battle which he ought to have fought before.

I had occasion to review the authorities upon this branch of the case at the present term in the case of *Lindsley* v. *Thompson, infra,* 272, where the direct question was ably argued by counsel and fully considered. It is unnecessary to go over the same ground again.