KING *against* BALDWIN and FOWLER.

Mere delay of the creditor to call on the principal debtor for payment, will not discharge the surety.

But if the creditor, by express agreement with the principal, varies the terms of the contract, by enlarging the time of performance, without assent of the surety, the latter is discharged.

A surety, on paying the debt, is entitled to stand in the place of the creditor, and to be subrogated to all his rights against the principal.

The rules for the relief of a surety are the same at law as in equity, when the facts are the same in both Courts. And where a surety, who has been sued at law, makes his defence, which is overruled as insufficient, he cannot, afterwards, on the same facts only, obtain relief in equity.

THE defendant *Fowler* being indebted to the defendant *Baldwin*, on the 10th of *October*, 1806, in the sum of *332 dollars and 89 cents, he, together with the plaintiff, as *his security*, executed a promissory note for that sum to *Baldwin*, payable on demand, with interest. In 1809, *F.* obtained his discharge under the insolvent act, and, in 1812, *B.* brought an action, on the note, against the plaintiff, who pleaded the general issue, and gave notice that he should prove, at the trial, that the debt, for which the note was given, was due from *F.* to *B.*, and that the plaintiff was merely surety; that *F.* was solvent and responsible long after the note was given; that the plaintiff informed *B.* of the failing circumstances of *F.*, and urged him to collect the money of *F.*, which *B.* refused to do. This special ground of defence was overruled by the judge, before whom the cause was tried, and a verdict was found for *B.* against the plaintiff *K.* for 459 dollars, on which judgment was rendered. The bill stated that the plaintiff consented to be security for *F.* for one year only; and that *B.* received money from *F.* for forbearance; and that part of the sum included in the note was not due from *F.* to *B.*; but these facts were denied by *B.* and *F.*, in their answers; and the depositions did not substantiate the allegations of the plaintiff.

It was proved that the plaintiff had frequently urged *B.* to sue *F.*, and that *B.* said he believed *F.* was an honest man, and he would not trouble him; that he would as soon lose his debt as prosecute him for it.

*Burr*, from the plaintiff, contended, that there was evidence of such neglect and refusal by *B.* to take any measures to collect the money of *F.*, or such collusion with him, as would discharge the plaintiff from his liability, as *surety*

[ * 555 ]

1817.

KING

v.

BALDWIN.

[ * 556 ]

of *F.* That *B.* was bound to use diligence to obtain payment of the note from *F.*, especially after application to him, for that purpose, by the plaintiff; and that giving time to the principal debtor, discharged the surety ; *as the creditor had no right to increase the risk of the surety without his consent. He cited 2 *Bro. C. Rep.* 579. 2 *Vesey, jun.* 540. 544. *Tothill's Rep.* 280. *Nelson's Ch. Rep.* 9. 3 *Atk.* 91. 10 *East, Rep.* 34. 38. 14 *Vesey, Rep.* 168. 170. 20 *Viner, Ab.* 104. *Kirby's Rep.* 397.

*D. B. Ogden,* contra, insisted, that there was no general principle in law or equity, that the mere delay of the creditor to sue the principal debtor would discharge the surety. The equity of each case must very much depend on its special circumstances. That the doctrine contended for by the plaintiff was applicable only to *sureties* for the performance of *duties or trusts.* That no day of payment was fixed. The defence of the surety, if any he had, was good at law, (*The People* v. *Jansen,* 7 *Johns. Rep.* 332.) and there was sufficient evidence of the facts on which relief was now sought in this Court. All the allegations in the bill were denied or disproved, except the fact that the plaintiff became surety for *B.*; and it was not competent to the plaintiff to prove the contract different from the terms of the note.

THE CHANCELLOR. The allegation in the bill that the note was procured by fraud, is denied in the answer, and not supported by proof. It is equally denied, and is without proof, that the plaintiff had offered payment of the note. The plain state of the case is, that in *October,* 1806, *Fowler,* with the plaintiff as his surety, gave *Baldwin* a note, payable on demand, and that the note was fairly and freely given, and for a sum then actually and *bona fide* due. The testimony establishes these facts beyond any reasonable doubt. This note was put in suit at law, in 1812, and a recovery had against the plaintiff; though he had set up in his defence the same matters of fact on which he now seeks relief in this Court.

[ * 557 ]
Where a party, on being sued at law, made his defence, which was overruled as insufficient, he cannot, on the same facts, merely, obtain relief in equity.

*Perhaps it would be sufficient to rest the objection to the plaintiff's claim to relief here, on the trial and recovery at law. He has made his defence to a recovery on the note before a Court of competent jurisdiction, upon the same facts that he now puts forward, and that defence was overruled as insufficient. It was observed by the present chief justice, in delivering the opinion of the Supreme Court in the case of *The People* v. *Jansen,* (7 *Johns. Rep.* 332.) that there was nothing in the nature of a defence by a surety,

432

to make it peculiarly a subject of equity jurisdiction; and that whatever would exonerate the surety in one Court, ought also in the other. The facts being ascertained, he observed, the rule must be the same in that Court as in the Court of Chancery; and this was, undoubtedly, the opinion of Lord *Loughborough*, in the case to which the chief justice refers.

But the cause has been investigated and discussed here upon its merits, and I am willing to consider it in that light.

It is admitted, that the plaintiff signed the note as surety for *Fowler*, and the only ground for relief is, that *Baldwin* neglected and refused to prosecute *Fowler*, though repeatedly pressed by the plaintiff, until *F.* had become insolvent, and unable to pay. Several witnesses, on the part of the plaintiff, testify, that *Baldwin* often declared that he would not sue *F.*, if he lost his debt; and that he had refused to take part of the debt from the plaintiff. There are witnesses, on the other hand, who declare that *Baldwin* made repeated unsuccessful applications to *F.* and the plaintiff for the money. There are, likewise, some sayings of *Baldwin*, as testified to by *Wm. Brown*, from which an inference has been attempted to be drawn, that *F.* had paid money to *Baldwin* for forbearance; but the testimony is too loose for any safe deduction; and the same observation will apply to much of the testimony respecting declarations of *Baldwin*. There is nothing more dangerous than to impair the force and effect of solemn contracts in writing, by careless, idle, and, perhaps, unmeaning conversations; *and as far as such testimony is in contradiction to the language of the note itself, it is utterly inadmissible.

It will not be pretended, that *Baldwin* was bound to accept of any partial payment from the plaintiff, even if any such was offered, and the question is, whether the omission to prosecute *Fowler*, though requested by the plaintiff to do so, was a discharge of the plaintiff. This is certainly not the common understanding on this subject. It would lead to a great deal of imposition and fraud, if sureties in an obligation for the payment of money could discharge themselves, merely on the ground of the delay or indulgence of the creditor, or by artfully seizing on unguarded remarks in conversation, (perhaps intentionally drawn forth,) expressive of a humane and determined indulgence. I am persuaded there is no rule of equity which goes so far. There are some notes of cases mentioned in *Tothill*, (279, 280.) in the time of *James* I., in which it would seem that the surety in an obligation had been relieved, where the bond was continued for several years, without his privity. But the note of the cases is so very imperfect, and so destitute of facts

1817.

KING
v.
BALDWIN.

The rules for the relief of a surety are the same at law as in equity, where the facts are the same in both Courts.

Danger of admitting parol declarations, or conversations of parties, to impair written contracts.

[ * 558 ]

1817.

KING
v.
BALDWIN.

[ * 559 ]

*Tothill's Re-*
*ports of little*
*authority.*

Mere delay
of the creditor
to call on the
principal debt-
or, for pay-
ment, does not
discharge the
surety, unless
there is an ex-
press contract
for that pur-
pose.

and circumstances, as to be altogether unfit to serve as a guide, and unworthy to be cited as authority. Thus, for instance, the case of *Saunders* v. *Smith & Churchill* is mentioned, as containing the decision that " a surety was relieved where a bond was continued in use, without his privity, he thinking the same to be paid;" but, at the bottom of the page, we find the same case stated more at large, from which it appears, that though the bond was continued for several years, when the surety supposed it had been paid, and it was then put in suit against the surety, the relief was only granted against the heir of the principal debtor, in consequence of his having sufficient assets. The case of *Moile* v. *Roberts* is also cited by *Tothill*, for the position, that " the heir of a surety, where the bonds were continued, without the privity of the surety, was relieved." But if *we examine this same case, as reported in *Nelson's Ch. Rep.* 9., according to *Viner*, (vol. 20. p. 104. pl. 3.) it will be found, that the surety was sued at law, on a bond of 18 years' standing; and it appearing that the obligee had, some years before, purchased lands of the principal debtor, to five times the amount of the bond, it was presumed, from *the antiquity of the bond, that the obligee did deduct the debt out of the purchase money*, and on that ground the surety was held discharged, and the suit at law enjoined.

This explanation of two cases is sufficient to show what little reliance is to be placed upon the loose notes of *Tothill*, which were collected and alphabetically arranged by him, in the shape of an index, and published after his death.

The established doctrine is, that mere delay in calling on the principal will not discharge the surety, provided that delay be unaccompanied with any settled or binding contract for that purpose. The rule was so understood by Baron *Wood*, on the trial of the case in 10 *East*, 34., and by *Story*, J., in the case of *Hunt* v. *the U. S.*, (1 *Gallison*, 32.) and by the Ch. J., in the case of *The People* v. *Jansen*, already referred to. So in the case of *Wright* v. *Simpson*, (6 *Vesey*, 734.) Lord *Eldon* declared, that he never understood that, as between the obligee and the surety, there was an obligation of active diligence against the principal. The surety was guarantee, and it is *his* business to see whether the principal pays, and not that of the creditor. The decision in the case of *The Trent Navigation Company* v. *Harley* (10 *East*, 34.) was founded on the same doctrine, that the mere *laches* of the obligee, in not calling on the principal, was not a discharge of the surety. I might also refer to the case of *Peel* v. *Tatlock*, (1 *Bos. & Pull.* 419.) for the same purpose. All the cases of relief of surety have gone upon the ground

that *time was given to the principal, by contract,* without consent of the surety. The doctrine is, that the surety is bound by the terms of *his contract; and if the creditor, by agreement with the principal debtor, without the concurrence of the surety, *varies these terms,* by enlarging the time of performance, the surety is discharged, for he is injured, and his risk is increased. The surety is entitled to pay the debt when it becomes due, or he may call upon the creditor, by the aid of this Court, to enforce his demand against the principal debtor. On paying the debt, he is entitled to the creditor's place, by substitution; and if the creditor, by agreement with the principal debtor, without the surety's consent, has disabled himself from suing when he would otherwise have been entitled to sue, under the original contract, or has deprived the surety, on his paying the debt, from having immediate recourse to his principal, the contract is varied to his prejudice, and he is consequently discharged. This is the true principle to be extracted from the cases.

In *Skip* v. *Huey and others,* (1 *Atk.* 91.) the defendants were bound in a bond to the plaintiff, for the payment of money, and one of them was surety for the other two. The obligee, by a new agreement with one of the debtors, took notes of different persons, payable at future days, in lieu of the bond, and took, also, an agreement of the debtor to make up the deficiency, and delivered up the bond. It was held by Lord *Hardwicke,* that the obligee was not entitled to any relief against the surety, though the new agreement turned out to be illusory and fraudulent. The next case I shall mention, was that of *Nisbet* v. *Smith,* (5 *Bro.* 578.) which lays down the rule of equity, on this subject, with more fulness and precision. The bill stated, that the defendants, after obtaining judgment against one *Maynard,* on a bond to pay a debt from the plaintiff to the defendant, had, *by agreement, staid the execution for three years,* and the judgment was confessed under that agreement. This agreement was made without the knowledge of the plaintiff, who was considered as a surety for *Maynard,* the principal debtor, and relief was granted to him against the *debt by a perpetual injunction. The lord chancellor said, that generally speaking, the surety might come into this Court to compel the debtor to pay the debt, and the Court would compel the creditor to bring his action. But as the creditor had given credit to the principal debtor, for three years longer than the bond imported, at the expense of the surety, and without his privity or consent, the surety was discharged. The same principle was recognized in *Rees* v. *Berrington,* (2 *Vesey,*

435

*Margin notes:*

1817.

KING
v.
BALDWIN.

[ * 560 ]

But if the creditor, by agreement with the principal, *varies the terms of the contract,* by enlarging the time of performance, without the consent of the surety, the latter is discharged.

[ * 561 ]

*jun.* 540.) The plaintiff in that case was surety in a bond payable by instalments in 1789 and 1790. In *September*, 1790, the money being all unpaid, the obligee came to an arrangement with the principal debtors, and took notes for the two instalments, payable in 1791, 1792, and 1793, and all this was done without communication with the plaintiff, and it was ruled that he was accordingly exonerated. The doctrine there laid down was, that if the condition of a bond be extended, it varied the contract and responsibility of the surety, and increased his risk. A surety does not become bound that the principal shall pay in twelve months, when he was to pay in six, and an indulgence of this nature, contrary to the terms of the original engagement, discharges the surety, if done without his consent. The surety has a right, on the day the debt is due, to come into chancery and insist on its being put in suit; and if the obligee has suspended that right, by a new agreement with the debtor, he has disabled himself to do that equity to the surety which he had a right to demand, and which the relation between the surety and debtor required. So, in *Boultbee* v. *Stubbs,* (18 *Vesey,* 20.) the surety was held to be released, because the obligee agreed with the principal debtor to postpone his remedy, by changing his immediate right to sue into a right to call for certain instalments. Though this was declared to be done without prejudice to his security, yet it was held to be varying the contract to the injury of the surety, by depriving him of his immediate *right to have the debt collected. The same special agreement with the debtor, postponing the collection of the note, existed in the case of *Deming* v. *Norton,* (*Kirby's Rep.* 397.) and it was held to be a release of the surety.

The case of *The People* v. *Jansen,* to which I have already alluded, is certainly not in contradiction to these cases. That case was quite different from that of a bond to a private individual, who is not bound to watch over the conduct of the principal debtor. It was there the special duty, by law, of the supervisors of the county, for whose use the bond was taken, to inspect the conduct and accounts of the principal, who *was a loan officer, and the surety had a right to expect and rely on the performance of that duty. It was, therefore, a peculiar case, and attended with very special circumstances and extraordinary *laches,* equivalent to an enlargement of time.

I have said, that the surety has a right, at any time after the debt is due, to apply to this Court to coerce the creditor to collect his debt. All the cases speak this language. In *Nisbet* v. *Smith,* Lord *Thurlow* admitted, that the surety might apply to chancery, for the purpose of compelling the

1817.

KING
v.
BALDWIN.

A surety, when the debt becomes due, may come into equity, to compel the creditor to sue for and collect his debt of the principal.

[ * 562 ]

436

obligee to bring his action, and that it was a common case which forced a surety into chancery to be so relieved. So in *Rees* v. *Berrington*, Lord *Loughborough* said, that "the surety had a right, the day after the bond is due, to come here and insist upon its being put in suit." It is said, in 6 *Vesey*, 734., that he may, on indemnifying the creditor, even compel him to prove the debt, under a commission of bankruptcy. This safe and reasonable doctrine was also a part of the civil law, which allowed a surety who was in peril, to sue for his indemnity or discharge. (*Dig.* 17. 1. 38. 1.) There is no case, however, in the *English* law, in which the personal application of the surety to the creditor was held to be compulsory on the creditor, at the hazard of discharging the surety. But since the argument of this *cause, I have met with a very recent decision of the Supreme Court, in *Pain* v. *Packard*, (13 *Johns. Rep.* 174.) which decides, that if the holder of a note is requested by the surety, (being one of the joint makers,) to proceed without delay, and collect the money of the principal, who is solvent, and he omits to do it, until the principal becomes insolvent, the surety will be exonerated at law. If this had been understood to be the law, when the case now before me was in the Supreme Court, I should not have been obliged to discuss it; for the same plea in the shape of a notice, under the general issue, was offered as a defence to the action at law, and overruled, on the trial at the circuit, and the decision acquiesced in by the present plaintiff. With the utmost deference for the judgment of the Supreme Court, I cannot as yet find the evidence, that a surety was ever before held discharged by such means. When the cases all speak of the right of a surety to coerce the creditor to sue, by means of an application to chancery, they imply, that he cannot do it by merely calling on the creditor, or by any notice or act, *in pais*. The cases of discharge are all founded on the fact of a *new agreement* between the debtor and creditor, *varying* the contract by which the security originally stood bound. This was the great principle of the case of *Ludlow* v. *Simond*, (2 *Caines's Cases in Error*, 1.) When the surety has ample and well-settled means of relief, through the medium of a Court of equity, which will at once *compel* the creditor to his duty, it is not necessary, and, as I humbly apprehend, not expedient, to introduce a new principle of action between creditor and surety. Will it not open a litigious inquiry as to the certainty and efficiency of the notice, and does not such a weapon, left at large in the hands of a surety, afford temptation to vexation, imposition and fraud? As the relief was hitherto granted, there could be no injury, misunderstanding, or

abuse. I feel embarrassed, between my respect for that decision, and my conviction *that the previous rule was different. But I am too well acquainted with the learning, the talents, and the liberality of that Court, not to know, that a free discussion of legal principles is perfectly agreeable to their disposition and character; and I feel the less oppression under the weight of that authority, as the point appears not to have been argued by counsel, or elaborately discussed, and we have only a short note of the decision. In one of the cases, I have referred to, Justice *Story*, of the Supreme Court of the *United States*, after examining the question with his usual diligence and ability, declares, that he can find no case, that mere delay to require payment, without any contract for that purpose, has been held to vary the responsibility of the surety; and he adopts it as a sound principle, that delay, unaccompanied with *fraud*, or a settled *agreement* with the principal for that purpose, will not discharge him. If the rule had been that delay, though contrary to the declared wishes of the surety, would exonerate, the books would not have been without precedents, for the case must have been of almost daily occurrence.

I am obliged to conclude, that the plaintiff is not, in this Court, entitled to relief. He has not availed himself of the established means, in his power, of compelling *Baldwin* to collect his debt of *Fowler*; and there is no proof or pretext, that *Baldwin*, by any agreement with *Fowler*, enlarged the time of payment, or impaired the rights of the plaintiff, in his relation as surety. The plaintiff might, at any time, have paid the debt, which he admits he never offered to do, or he might have compelled, by application to this Court, the collection of the debt of *Fowler*. He has done neither, and has no ground for equitable relief.

I am, accordingly, of opinion, that the bill be dismissed, with costs.

                                        Bill dismissed.