The opinion of the Court was delivered by
Harper, J.
The doctrine of equity seems to be very well settled, that mere indulgence given by a creditor to the principal debtor, mere delay to collect his debt, even if there has been negligence, does not discharge the surety. The doctrine has been recognized by this Court in the case of Hampton vs. Levy, 1 M’C. Ch. 107. The subject was very fully considered by Chancellor Kent, in the case of King vs. Baldwin, 2 Johns. Ch. 554. He declared the established doctrine to be, that mere delay in calling on the principal, will not discharge the surety, provided that delay be unaccompanied with any settled or binding contract for that purpose. The English cases on which the doctrine has been settled, are all of this sort — there has been some stipulation, putting it out of the creditor’s power to proceed against the principal debtor. Nesbit vs. Smith, 2 Bro. C. C. 579 ; Rees vs. Berrington, 2 Ves. jun. 540 ; Boulbee vs. Stubbs, 18 Ves. 20. The case of the Trent Navigation Company vs. Harley, 10, East, 34, was one in which there had been great neglect and delay, and yet the surety was not held to be discharged. The principle seems to be, that the creditor has no right to make for the surety, without his privity, a different contract from that which he entered into. It is an equity of the surety to compel the creditor to proceed at law, and enforce his demand against the principal. But if the creditor has put it out of his power to proceed, the surety is deprived of *83 the benefit of this equity. Perhaps it is more correct to say, as expressed by Sir Vm. Grant, in Antobrus vs. Davidson, 3 Meriv., 578, that a surety may come into equity to compel the principal to relieve him of his liability, by paying off the debt. So in Kanelaugh vs. Hayes, 1 Ver. 190, it is said, although the surety is not troubled nor molested for the debt, yet at any time after the money becomes payable, the Court will decree the principal to discharge the debt, it being unreasonable that a man should always have such a cloud hanging over him. The Court, however, would not compel the principal to pay to a creditor who had stipulated by a binding contract, for further forbearance. In the present case, supposing the brothers of defendant in this State, to have been her legally authorized agents, it is not pretended that they agreed to indulge the administrator of Hicklin by any binding contract, which would have put it out of defendant’s power at any time to enforce her execution.
Another rule was contended for, viz: that if the surety applies to the creditor, and makes a positive request that he will enforce his demand against the principal, and he neglect to do so, and gives indulgence, the surety will be discharged. The only authorities I have found to this effect, are the cases of Pain vs. Packard, 13 Johns. R. 174, and King vs. Baldwin, 17 Johns. R. 384. Chancellor Kent examines the case of Pain vs. Packard, in King vs. Baldwin, 2 Johns. Ch., 554, and dissents from the doctrines established by it; and though his opinion was afterwards overruled upon appeal, yet I cannot but think it better supported by principle and authority. Contrary decisions are said to have been made in Dehuff vs. Turbett, 3 Yates, 157, and in Commonwealth vs. Wolbert, 6 Binn. 292. The English decisions go upon some alteration of the contract made between the creditor and principal, or some positive act injurious to the surety. It is said by Lord Eldon, in Wright vs. Simpson, 6 Ves., 734, that the surety is a guarantor, and it is his business to see whether the principal pays, and not that of the creditor. There certainly is no rule that a creditor shall *84 exhaust his remedy against the principal, before proceeding against the surety: yet this would seem almost a necessary consequence of determining that he was bound at any time to proceed against the principal at the surety’s request. The truth is, that, with respect to the creditor, both are principals: he has the option to proceed against either. There is no difference between the rules of law and equity in this respect, only the creditor must not alter the terms of the contract, or do any act which may operate-a fraud on the surety. Such would be the releasing of a mortgage which he had taken of the principal debtor, to the benefit of which, the surety would be entitled, in the event of his being compelled to pay off the debt. In this case, the defendant might have enforced her execution against the complainant alone, refusing altogether to proceed against the estate of Hicldin; how then can it be said that she was bound to proceed against the estate of Hicklin, at his request? If complainant had paid off the judgment, he would have been entitled to the control of it for the purpose of reimbursing himself.
With respect to the authority of the brothers of defendant in this State, to control the execution, or give indulgence, there is no evidence that any direct authority was given for such purpose. The defendant denies it in her answer, and one of the brothers in his testimony. I suppose, that in consequence of the nearness of their relationship, they took upon themselves to. interfere as they supposed might be to her advantage; but this would not bind her, if in fact she gave no authority. The Chancellor, in his decree, puts it upon her recognition of their acts, by receiving the money they remitted her; but I would suggest, with deference, that this could hardly amount to the recognition of any authority in them. I suppose she would have received the money through whatever hands transmitted. But on the principle of law, we are satisfied that the motion must be granted, and the Bill dismissed.

Bill dismissed.