GRAFTON L. DULANEY for Plaintiff.
EDWARD HINKLEY for Defendants.

———

[An appeal has been taken in this case which is still depending.]

———

JOHN WHITRIDGE
vs.                              } SEPTEMBER TERM, 1850.
ROBERT A. DURKEE'S EX'S.

———

[RIGHTS OF SURETIES—CHANCERY PRACTICE.]

———

THERE can be no doubt of the right of a surety, after a debt has become due, to file a bill to compel the principal debtor to pay, whether the surety has himself been sued or not.

A surety may resort to chancery, if he apprehends danger from the creditor's delay, and compel the creditor to sue the principal debtor, though he would probably be required to indemnify the creditor against the consequences of risk, delay, and expense.

After a surety becomes chargeable, by a forfeiture of the contract, or its non-performance by the principal, he may ensure a prompt prosecution, either by discharging the obligation, and becoming, by substitution, entitled to all the remedies possessed by the creditor, or he may coerce the creditor to proceed by an application to a court of equity.

A surety in the bond of a trustee, appointed to make sale of certain lands for the purpose of partition, filed a bill *quia timet* in the equity side of Baltimore County Court, against the executors of the trustee, praying for an account and general relief. This bill was removed to this court, but the cause in which the trustee was appointed, was not removed, but still remained, depending in Baltimore County Court. HELD—

That though it was very clear that this court may, upon the bill which has been brought here, administer the same relief which could have been administered by Baltimore County Court, yet it is equally clear that the account of the trust must be taken in the cause in which the trustee was appointed.

———

[The facts of this case are sufficiently stated in the opinion.]

THE CHANCELLOR:

It appears by the proceedings in this case, that a bill was filed in Baltimore County Court, as a court of equity, on the 14th of June, 1844, for the sale of certain parcels of real estate, formerly the property of Joseph Alemeida, deceased, for partition among his children, or their heirs, and, that a decree for that purpose passed on the 1st of January, 1845, appointing the testator of the defendants, trustee to make the sale. That in pursuance of said decree, he gave bond as trustee, with condition in the usual form for the faithful performance of. the trust thereby reposed in him, and, that shortly thereafter, in the same year, he made reports of his sales, amounting to the sum of $1925, which were finally ratified, the first, on the 22d of February, 1845, and the last sale, on the 24th of April thereafter. The record in that case discloses no farther proceedings, until the 19th of November, in the year 1849, when a petition was filed by the party in whose name the original bill was exhibited, in which it was alleged, that the trustee, Durkee, after making the sale, departed this life before he had completed his trust by paying over all the proceeds of sales, and praying that another trustee might be appointed for the purpose of completing the trust thus left incomplete by the former trustee, and upon this petition the court, on the same day passed an order appointing other trustees as prayed. It is admitted, however, in the present case, that the trustees thus appointed have not bonded, nor have they taken upon themselves, in any way, the execution of the trust.

Under these circumstances, a bill *quia timet* was filed by the complainant, the surety of Durkee, in his bond as trustee, on the equity side of Baltimore County Court, which was subsequently transferred to this court upon the suggestion of the defendants, in which, after stating and referring to the proceedings in the former cause, it is alleged, that Durkee failed to bring into court for distribution, the proceeds of the sales made by him, but appropriated the same to his own use. That Durkee is dead, and the defendants, his executors, are proceeding to settle up and close his estate, and that the complainant appre-

hends his assets will be distributed among irresponsible repre-
sentatives, before those entitled to the proceeds of the property
sold by him as trustee, shall claim or sue therefor, and that the
complainant as his surety, will thus be exposed to great peril
of loss.   Upon this statement of facts, the bill prays, that
the executors may account, and that they be decreed to pay
over to the trustees subsequently appointed, the amount re-
ceived by their testator, as trustee under the aforesaid decree,
and for further relief.   That portion of the prayer for relief,
which calls upon the defendants to pay the money to the new
trustees, is, however, abandoned, in consequence of the admis-
sion already adverted to, that they had not given bond or taken
upon themselves the execution of the trust.   If, therefore, the
complainants are entitled to any relief, they must get it under
the general prayer.

The answer to this bill, after admitting the proceedings in
the former cause, and the receipt of the money by the trustee,
Durkee, avers, that he did account for and pay over the same
to the parties entitled, and the defendants deny that he did ap-
propriate the proceeds of sale, or any part thereof, except his
commissions, to his own use.   They aver, that no claim has
been presented on account of said trust by any of the parties
entitled to the proceeds of the sale made by their testator, and
that they have paid all his debts, and are ready to close and
settle their trust in the Orphans' Court, as required by their du-
ty as executors.

There can be no doubt of the right of a surety, after a debt
has become due, to file a bill to compel the principal debtor to
pay, whether the surety has himself been sued or not, upon the
principle established at a very early period "that it is unreason-
able that a man should always have such a cloud hanging over
him." *Ranelaugh* vs. *Hays*, 1 *Vernon*, 190.   And as remarked
by Chancellor Kent, in *Hays* vs. *Ward*, 4 *Johns. Ch. Rep.*, 132,
"it is now considered as a settled rule, that a party may resort
to chancery if he apprehends danger from the creditor's delay,
and compel the creditor to sue the principal debtor, though prob-
ably he must indemnify the creditor against the consequences

of risk, delay and expense." The same principle has been affirmed by the Court of Appeals of this state, in the case of *Sasscer* vs. *Young & Kemp*, 6 *Gill & Johns.*, 243, and has been sanctioned by the Court of Errors of New York in 17 *Johns. Rep.*, 384. See also 1 *Story's Equity, section* 327, and 2 *Story's Equity, section* 849, and *King* vs. *Baldwin*, 2 *Johns. Ch. Rep.*, 561, 562.

In the case of *Sasscer* vs. *Young & Kemp*, the Court of Appeals, in speaking of the privileges of sureties, and the mode by which they may protect themselves from loss, say, that after they become chargeable by a forfeiture of the contract or its non-performance by the principal, in the manner and at the time agreed upon, may ensure a prompt prosecution, either by discharging the obligation and becoming by substitution entitled to all the remedies possessed by the creditor, or they may cause the creditor to proceed by an application to a court of equity. But the bond upon which the surety in this case rests his right to the interposition of the court in his favor by compelling the principal debtor to pay the debt, is not a bond for the payment of money at all. It is a bond with a collateral condition, and until the condition is shown to be broken, and the damages by the breach ascertained, nothing can be said to be due upon it. It is very true that the record in the case in which Durkee was appointed trustee does not show a compliance on his part with his duty as such, but it may, nevertheless, be, that he has paid the money received by him to the persons who were entitled to it, and the fact that they have never complained, although five years have elapsed since the sale, is a circumstance not without weight in speculating upon the subject. It cannot readily be supposed, that these parties would have waited for five years if they had received nothing from the trustee for the property sold by him. That a part of the money, at least, has been paid, is fairly inferrible from the petition filed in 1849, for the appointment of trustees to complete the trust, it being in that petition stated, that Durkee had died without paying over *all* the money received by him as trustee.

39

It can, in fact, scarcely be insisted, that the complainant is
entitled to a decree, directing these defendants, as executors
of Durkee, to bring into court the whole amount of the pro-
ceeds of the sales made by him.   Before any order could be
passed, an account would have to be taken, not only of the as-
sets in the hands of the executors, but to ascertain how much
is due from the former trustee.   But how can such an account
be taken in this cause, and between these parties.   The case
for the sale of the estate in question, is still depending on the
equity side of Baltimore County Court.   It has never been
transferred to this court, and although I think it very clear,
that this court may, upon this bill, which has been brought here
upon the suggestion of the defendants, administer the same re-
lief which could have been administered by the Baltimore
County Court, yet I hold it equally clear, that the account of
the trust of Durkee, should be taken in the cause, in which he
was appointed trustee.   In that cause his report of the sales
was made, and there, and there alone, the elements for stating
the account are to be found.   Besides, the proper parties are
not here, for taking such an account.   The only parties in this
case, are the complainant, the surety of Durkee, and his exec-
utors : the parties entitled to the money, if it has not been
paid, not being either plaintiffs or defendants.   How then,
would it be possible to have an account taken, when the ac-
counting parties are not present?

If, therefore, the court was to interfere at all, it must order
the whole proceeds of sale to be brought in by these executors,
when there is certainly ground for believing that the money, or
at least a portion of it, has been paid.   This would be a very
harsh proceeding, and one which is not necessary for the in-
demnity of the complainant, as surety of Durkee, because, as
has been shown, there is another mode by which he may pro-
vide for his safety : that is, by compelling the parties entitled
to the money, (if they have not been paid,) to sue the princi-
pal debtor, and in case they refuse to do so, his responsibility
as a surety, would be discharged.   Having this remedy fairly in
his reach, there can be no propriety in adopting a course

fraught with so much inconvenience and probable injustice to the estate of Durkee, and, therefore, this bill must be diminished. Though, under all the circumstances of the case, I do not think it would be right to subject the complainant to costs. The course he has taken, does not appear to me indicative of a disposition to harass the defendants unnecessarily, and, therefore, though the relief he has applied for is deemed inappropriate in the peculiar circumstances attending this case, I am still of opinion, that it would not comport with the principles which govern this court, to dismiss him as a party who comes before it, without any claim whatever, to its favorable consideration. The bill will, therefore, be dismissed, but without costs.

Wm. M. Addison and L. H. Williams for Complainants.
T. Parkin Scott for Defendants.