## Case No. 13,082.

SMITH v. MILWAUKEE & S. R. CO.

[9 Am. Law Reg. 655; 3 West. Law Month. 355.]

District Court, D. Wisconsin.    June Term, 1861.

RAILROAD COMPANIES—MUNICIPAL AID—LIENS—MORTGAGE.

1. An act of a state legislature, authorizing a city to issue its bonds in aid of railroad companies incorporated and organized, does not extend to companies afterwards incorporated.

2. Where a city issues its bonds in aid of a railroad company without authority of law, and receives therefor the bonds of the company, secured with other bonds by a mortgage upon its road, the city is not such a lien creditor for a valuable consideration as to entitle it to claim a share of the proceeds of the sale of the mortgaged premises made in satisfaction of the mortgage. But the city having received securities collateral to the company's bonds, a judgment creditor of the company cannot, by bill in equity, require the city to surrender these securities until its rights are determined by judicial proceeding, or it be released.

In equity.

MILLER, District Judge. This is a bill in equity. The complainant obtained a judgment in this court against the railroad company, defendant, and issued a fieri facias, which was returned unsatisfied. The bill charges that the city has in its possession, or under its control, notes and mortgages upon real estate to the amount of fifty thousand dollars, made and executed by divers persons to the company, which the company transferred to the city without consideration, and that should be applied to the debts of the company. The company made no defence.

The answer of the city and John H. Tesch, the treasurer, sets forth the acts of the legislature, under which, it is alleged, the city had lawful authority for issuing its bonds to the amount of one hundred thousand dollars to the company in aid of its work, and also the ordinances of the city council ordering the issue of the bonds; and, in consideration thereof, the company gave the city its own bonds, with the said notes and farm mortgages as collateral security. It is alleged that the company is insolvent; that the bonds of the city were issued, payable to the company or bearer, with negotiable coupons annexed; that the company negotiated these bonds for a valuable consideration to persons unknown; that the bonds are not yet payable, and there are coupons unpaid; that the road of the company has been sold in satisfaction of a mortgage; and that the operations of the company have ceased. These facts are not controverted.

The bonds of the city bear date the first day of January, eighteen hundred and fifty-seven, are payable to the Milwaukee and Superior Railroad Company, or bearer, and recite that they are "issued in pursuance of an ordinance of the common council of the city of Milwaukee, entitled 'An ordinance authorizing an issue of city bonds to the Milwaukee and Superior Railroad,' passed June 16, 1856, and approved by the legal voters of said city of Milwaukee, at an election for that purpose, on the 4th day of August, 1856; and of an act of the legislature of the state of Wisconsin, entitled 'An act authorizing the city of Milwaukee to loan its credit in aid of certain railroads,' approved April 2, A. D. 1853 [Laws 1853, p. 571]; and of the several acts amendatory thereto." The act described in the bonds authorizing the common council of the city of Milwaukee to loan the credit of the city by "issuing its bonds to aid in the construction of certain railroads leading from the said city, and particularly the Green Bay, Milwaukee and Chicago Railroad Company, the Milwaukee and Fond du Lac Railroad Company, and the La Crosse and Milwaukee Railroad Company—companies duly incorporated and organized: Provided, that there shall be loaned to either of said companies an amount not exceeding two hundred thousand dollars, nor, in the aggregate, an amount exceeding six hundred thousand dollars. And no bonds shall be delivered to any railroad company until at least ten miles of that portion of road mortgaged to the city by such company, to secure the payment of such bonds, shall have been constructed by such company; nor, thereafter, shall they be delivered faster than the work of construction of such portion of said road shall progress, nor shall there, at any time, be delivered to such company more than five thousand dollars in value of bonds for every mile of such portion of road constructed; but such bonds may issue, provided other equivalent securities shall be furnished in lieu thereof." An act in addition to

an act, authorizing the city of Milwaukee to loan its credit in aid of certain railroads, approved July 12, 1853 [Laws 1853, p. 844], provided the first-named act shall include the Milwaukee and Watertown Railroad Company, and other railroad companies duly incorporated and organized for the purpose of constructing railroads leading from the city of Milwaukee into the interior of the state, which, in the opinion of the common council, are entitled to aid from the city. The amount of bonds allowed to be issued to each company is limited, in this act, to two hundred thousand dollars, and the aggregate amount is limited to one million; and the question of issuing the bonds is to be first submitted to a vote of the voters of the city.

The Milwaukee and Watertown Railroad Company was incorporated by an act approved March 11, 1851 [Laws 1851, p. 180], and was organized before the date of the last act. The Milwaukee and Superior Railroad Company was incorporated by an act approved March 4, 1856 [Laws 1856, p. 126]. This company was incorporated for the purpose of constructing a road north from Milwaukee to Green Bay; and, by section twenty-six of the charter, "all the powers, rights, privileges, and franchises heretofore granted and conferred upon the Green Bay, Milwaukee and Chicago Railroad Company by an act incorporating that company, approved March, 1851 [Laws 1851, p. 256], and the several acts in addition thereto or amendatory of the same, so far as the same relate to or authorize the location or construction of a railroad north of the depot of the Green Bay, Milwaukee and Chicago Railroad Company in the city of Milwaukee, are, with the consent of the last-mentioned company, taken from it and transferred to the company then incorporated."

The city claiming a portion of the proceeds of the sale made under the mortgage of the company to the Farmers' Loan and Trust Company of New York, I delivered the following opinion, disallowing the claim: "By reference to the ordinance of the common council of the city of Milwaukee, it appears that by an ordinance passed April 30, 1853, and adopted by the legal voters May 19, 1853, city bonds were authorized to be issued to the Green Bay, Milwaukee and Chicago Railroad Company, not exceeding in amount two hundred thousand dollars. By an ordinance passed the same day, a similar amount of bonds were authorized to be issued to the La Crosse and Milwaukee Railroad Company. And by another ordinance, passed on the same day, a similar amount to the Milwaukee and Fond du Lac Railroad Company. These several ordinances authorize bonds to be issued on the terms and conditions specified in an act authorizing the city of Milwaukee to loan its credit in aid of certain railroads, approved April 2, 1853, and on the terms and conditions therein provided. These appropriations to the three companies mentioned in

the act amount to six hundred thousand dollars, the extent of the sum authorized by the act; and they exhausted the power granted by the act to the common council. And from this, it may be inferred that the act was not so construed as to include any other companies than those expressed. The act of July 12, 1853, included the Milwaukee and Watertown Railroad Company, (which had been incorporated and organized previous to the act of April 2, 1853,) and any other railroad company duly incorporated and organized for the purpose of constructing railroads leading from the city of Milwaukee. This is the only act supplementary to the act of April, 1853, referred to in the city bonds. The only company mentioned in this act is the Milwaukee and Watertown Railroad Company. Whether there were any other companies of the description then incorporated and organized, I need not inquire. The Milwaukee and Superior Railroad Company was not then incorporated and organized; and it could not have been contemplated by the legislature, as a company was then incorporated for constructing a road to Green Bay, and which was specially mentioned in the act of April, 1853. Grants of power are to be construed literally; and legislative grants are not to be so construed as to include subjects not in existence, nor not created in the grant, nor specially provided for, if created in future. This act must necessarily relate to companies incorporated and organized at the date of its approval. There is not the least reference in the act to companies thereafter incorporated and organized, but the letter of the act grants the power expressly to issue bonds to companies then incorporated and organized. There is no room for construing the act so as to include companies to be thereafter incorporated and organized. It is well understood that a legislative grant of authority to the common council to issue the bonds was necessary to their validity. For this reason the acts are recited in the bonds under which the common council issued them. These acts are public, and it is the duty of every person dealing in those bonds to refer to them. They form the basis of the contract, and the purchaser of the bonds is charged with knowledge of them. The bonds were issued to the railroad company, and receipted for, in two parcels of fifty thousand dollars each, in the month of March, 1857. In this respect the common council did not comply with the expressed directions of the act of April, 1853, to issue the bonds in proportion as the building of the road progressed; but they accepted the bonds of the company included in the mortgage, in return for the city bonds. If there are any purchasers for a valuable consideration of the city bonds, they are justly to be deemed equally as reckless of their own interests as the common council were of those of the inhabitants of the city. By the acts under which these bonds purport to be issued, the inhabitants of the city are subjected to taxation for the payment of principal and interest. For this reason it is right that the legality of the bonds should be ascertained and settled; for the people will not consent to be taxed for the payment of an unauthorized and illegal debt, particularly when they have cause to feel that the city authorities have not been guardians of their interests."

In that case, I considered that the bonds of the city had been issued without lawful authority, and that the property of the people could not be lawfully taxed for their payment, upon failure of the company to indemnify or release the city. And it was thought that, by granting the application of the city, the matter might become more complicated and more embarrassing to the city and its inhabitants. I thought that the city had not an equal right with the bondholders to receive upon the mortgage, as a lien, a portion of the proceeds of sale. But this case is an adverse suit, instituted by a creditor of the company, to compel the city to surrender up to him the securities specially deposited with it for its indemnity. As it respects those securities in the possession of the city, this complainant stands on no better footing than the railroad company. This proceeding, which is an attachment in equity, does not give complainant any right to a decree against the city for the surrender of the securities, if the company has no right to demand their return.

The company became insolvent, after negotiating for a large sum of money the bonds of the city advanced for its benefit. The city stands as surety of the company; and by the receipt of the securities in the character of a trustee in equity so far as to entitle the bondholders to claim them. Although the city bonds are issued without an existing statute expressly authorizing it, yet they were issued in pursuance of an ordinance of the city, which may be legalized upon application of the city authorities, or be confirmed by acts of the inhabitants. They may consent to be taxed for the payment of the bonds; but it is not very probable that they will. We cannot tell what may happen before the bonds become payable. The city is liable to be sued, and put to expense in defending suits upon coupons, and upon the bonds after they become payable. The court cannot deprive the city of its indemnity against these expenses; nor can the court say to the city authorities that they shall take advantage of the defect of authority for issuing the bonds. The city is not here in this case, in such a position as to authorize the court in passing judgment against it, to that extent. The court can make no order in this case, affecting the rights of holders of the city bonds, or preventing them from setting up an equitable claim to the securities. The holders of these bonds having, for a valuable consideration paid the company for them, would, in equity, be entitled to follow the securities, if the city

should not be damnified. They would have a superior equity to that claimed by complainant. Equity would reimburse them out of those securities, for the money they actually paid the company for the city bonds with interest, although the bonds may have been issued without lawful authority. At all events, the city has a right to retain the securities until its liabilities and rights are judically determined upon some proceeding on the part of the bondholders, and until then judgment creditors of the company cannot interfere.

The case of Parker v. Rochester, 4 Johns. Ch. 329, is similar in principle to this one. The endorser of negotiable notes received a judgment of indemnity from the maker; and, the notes being negotiated with the Utica Insurance Company, the endorsement was void, as the company was prohibited by a law of the state of New York from doing that kind of business. The complainant, as a judgment creditor of the maker of the notes, filed the bill to remove the lien of the judgment in favor of the indorser, upon the alleged ground of want of consideration, the plaintiff in the judgment not being legally liable to loss or injury in consequence of his endorsement. The chancellor did not consider that a third person, although a creditor, had any equitable right to interfere in the contract between a debtor and his surety; or to remove the surety's indemnity even when he was not legally bound, nor legally liable to loss. Also, in cases upon contracts void for usury, the surety is not legally subject to loss, but his indemnity cannot be taken from him until his liability is judicially determined. See, also, 1 Vern. 190; 2 Johns. Ch. 561; Ross v. McKinny, 2 Rawle, 229.

Being satisfied that complainant is not entitled to the decree prayed for in his bill, it must be dismissed as to the city of Milwaukee and John H. Tesch, the treasurer.