LA MOTT THOMSON *v.* LAURA S. TAYLOR, EXECUTRIX OF JAMES B. TAYLOR, DECEASED.

IN THE MATTER OF THE CLAIM OF ORSAMUS B. MATTESON, FOR EXPENSES INCURRED BY HIM AS INDORSER AND SURETY UPON NOTES OF SAID JAMES B. TAYLOR.

*Surety — recovery by, from principal, of necessary expenses of action.*

Defendant's testator having died, leaving promissory notes outstanding to the extent of $80,000, on which one Matteson was liable as an accommodation indorser and surety, the latter gave security to the holders thereof, and brought actions in their names to collect the same. Upon the settlement of the estate, the referee found that in so doing he incurred certain necessary and reasonable costs and expenses, over and above the costs allowed in the judgments, amounting to $14,091.98. *Held,* that he was entitled to recover that sum from the testator's estate.

APPEAL from an order of Oneida Special Term, disallowing the claim of O. B. Matteson for expenses incurred by him, as indorser and surety, upon notes of one James B. Taylor, deceased. This action was brought to marshall and distribute the assets of the estate of the deceased.

James B. Taylor, of New York city, died in August, 1870, leaving commercial paper outstanding indorsed by Orsamus B. Matteson, to the amount of $76,000.

His will was admitted to probate, and pending an appeal taken from the surrogate's decree of probate, Edward H. Tracy, deceased, and the defendant, Laura S. Taylor, were appointed and qualified as executors under the provisions of chapter 603 of the Laws of 1871.

After Taylor's death, action was brought by Matteson in the names of the holders of the notes above mentioned, against the executors, and judgments were recovered to the amount of $98,004.56.

To prevent the creditors from resorting to his own estate for payment of their claims, Matteson agreed to and did secure them against ultimate loss, and meantime assisted them in collecting the notes out of Taylor's estate, and the above-mentioned proceedings

were instituted under his auspices, though in the names of the various holders of said paper. Subsequently a reference was ordered, to take an account of and report to the court the amount due to the plaintiff herein, and to all other creditors, and to ascertain what expenses of administration had been incurred and remained unpaid, and the items thereof. At the hearing before the referee, Mr. Matteson claimed, and the referee reported, that he was entitled to be reimbursed his reasonable and necessary costs and expenses, incurred in the prosecution and defense of actions for the collection of debts for which he was surety, the same amounting to $14,091.98.

*Jno. D. Kernan,* for the appellant.

*Ward Hunt, Jr.,* for the respondent Levy, trustee, etc.

*Seymour & Weaver,* for the respondent Tracy, executor, etc.

SMITH, J.:

The facts upon which the claim of Mr. Matteson rests are briefly these: In 1870, James B. Taylor died, insolvent, owing debts to a large sum, among which were several promissory notes, amounting in all to about $80,000, on which Matteson was liable as his accommodation indorser and surety. The notes having become due, and Matteson having been sued or threatened with suit, he gave security for their payment to the holders, and with their consent, undertook the prosecution of suits in their names, respectively, for the purpose of collecting the notes out of the estate of the deceased. The referee has found that in so doing, he incurred certain necessary and reasonable costs and expenses over and above the costs allowed in the judgments, amounting to $14,091.98, which sum was allowed by the referee and disallowed at Special Term.

The action in which the claim is presented is one of equitable cognizance. Its object is to marshal and distribute the assets of the estate of the deceased debtor, through the agency of a receiver.

It is well settled, that a surety has the right to come into equity, after the debt has matured, and compel the creditor to sue the principal, and collect the debt from him in discharge of the surety, if the latter will undertake to indemnify the creditor for the risk,

delay and expense of the suit. (*King* v. *Baldwin*, 2 Johns. Ch., 561; S. C. on appeal, 17 Johns. R., 384, 390; *Hayes* v. *Ward*, 4 Johns. Ch., 132; Story's Eq. Jur., § 849.) In such case, it is plainly equitable that the costs and expenses which the surety is obliged to assume, as well as the costs of his action to obtain the relief, should be borne by the principal debtor, since they are caused by his default. He, as well as the creditor, is a proper party to the action (*Warner* v. *Beardsley*, 8 Wend., 194, 199), and the court may make such decree against him respecting costs and expenses, as will be equitable. In the present case, the creditors, by agreement, granted to Matteson the equitable relief which he, as surety, under the rule above adverted to, could have obtained by suit. On his securing the debt, they permitted him to prosecute actions against the estate of Taylor, in their names, at his expense. The claim allowed him by the referee is for his necessary and reasonable expenses in those actions, over and above the costs recovered in the judgments. His claim to be reimbursed out of the estate, seems to rest upon the same equitable grounds that would have entitled him to be made whole by the principal debtor, if he had sued the latter in his lifetime, jointly with the creditors, to obtain the like relief. The only difference is, that the estate is now saved the costs of an action for such relief, the arrangement between the creditors and the surety having rendered such action unnecessary.

The referee having found that the expenses claimed were reasonably and necessarily incurred in suits instituted to collect the debt out of the estate of the principal debtor, it seems to me they were properly allowed by him, upon the ground above indicated.

These views do not conflict with the rule that at law a surety can recover only the amount paid by him on the obligation, with such reasonable expenses as he may have been obliged to incur. His right to recover, at law, depends upon the fact of his payment of the debt. But, in equity, if the time of payment is past, and the creditor neglects to proceed, the surety may institute a suit against the principal debtor and the creditors, not to delay the latter, but to compel the former to pay the debt, and thus to relieve the surety from his responsibility. (*Warner* v. *Beardsley*, *supra*, p. 199.)

Nor does the equitable right of the surety above stated depend upon a special covenant of the principal debtor to indemnify him.

It rests on the contract which equity implies on the part of the principal debtor to indemnify his surety, "and the ground of equity is that when the money is due the equity arises." (*Hungerford* v. *Hungerford*, Gilb. Eq. R., 67; Burge on Suretyship, 378.)

If these views are correct, the claim should be allowed, whatever construction be given to the statute relied on by the appellant's counsel. (Laws 1858, ch. 314, § 3.) I am of the opinion, however, that the statute does not aid the appellant, and that the true construction is that which was given to it by the learned judge at Special Term, to wit, that the only costs and expenses which a surety can recover under its provisions are those which he has incurred, in good faith, in the prosecution or defense of an action by or against himself as such surety.

But independently of the statute, the appellant is entitled to have the claim allowed.

Order appealed from reversed, as to the claim in question, and the report of the referee, in that respect, confirmed, with ten dollars costs of the appeal and disbursements, to be paid by the respondents.

Present — MULLIN, P. J.; TALCOTT and SMITH, JJ.

Order of Special Term as to the appellant's claim in question reversed, report of referee in that respect confirmed, with ten dollars costs of appeal and disbursements, to be paid by the respondents.